## INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 249, Appellant,

v.

## WESTERN PENNSYLVANIA MOTOR CARRIERS ASSOCIATION.

No. 77–1764.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1978.

Decided March 30, 1978.

---

■■■■■■■■■■■■■■■■■■■■■

Joseph J. Pass, Jr., Edward H. Walter, Jubelirer, Pass & Intrieri, Pittsburgh, Pa., for appellant.

Martin Lubow, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal presents a problem involving the jurisdiction of a joint committee to resolve a labor dispute between the Western Pennsylvania Motor Carriers Association (the Association), representing motor carriers and allied employers in twenty-nine counties of Western Pennsylvania, and Local 249 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union), the local union with authority in Allegheny County, Pennsylvania.

### I

The controversy in this case centers on a trucking industry practice known as "spotting", whereby a carrier may instruct a driver to leave his trailer at a specified location, and not to remain with it while it is being loaded or unloaded. The driver may then be assigned other duties. In all counties of Western Pennsylvania other than Allegheny County, collective bargaining agreements with Teamster locals permit spotting. In Allegheny County, however, spotting has been prohibited except at a few designated terminal facilities. These restrictions on spotting in Allegheny County have been in existence since the 1958 collective bargaining agreement, and have been maintained since then by maintenance of standards clauses in all subsequent contracts. The Maintenance of Standards Clause which at the time of this dispute limited the right of employers to spot provided:

The Employer agrees that all conditions of employment in his individual operation relating to wages, hours of work, overtime differentials, and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and the conditions of employment shall be improved wherever specific provisions for improvement are made elsewhere in this Agreement. It is agreed that the provisions of this section shall not apply to inadvertent or bona fide errors made by the Employer(s) or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of the error. If not corrected within ninety (90) days, such better condition shall remain in effect. However, a request for relief from such error may be filed in writing with the appropriate Conference Area Committee. The Conference Area Committee, by a majority vote, shall determine whether and in what manner such better terms and/or conditions resulting from such error shall be continued or eliminated.[1]

It is undisputed that the proscription against spotting has been the standard in Allegheny County. It is also undisputed that such restrictions place Allegheny County employers at a competitive economic disadvantage with Association members in other counties.

On July 3, 1975 the Association, on behalf of Allegheny County employers, sub-

---

1. Article 6, section 1 of the National Master Freight Agreement and article 44, section 1 of the Teamsters Joint Council No. 40 Freight Division Local Cartage Supplemental Agreement. The two articles are identical.

mitted a request to the Eastern Conference Joint Area Committee (ECJAC) [1a] seeking relief from the spotting restrictions, pursuant to articles 6 and 44 of the collective bargaining agreement. ECJAC assumed jurisdiction and held a hearing. Both sides submitted briefs. The Union argued before ECJAC that ECJAC did not have jurisdiction over the dispute; the Union also argued the merits of the question.[2] In October ECJAC reserved decision and, while retaining jurisdiction ordered that the parties attempt to reconcile the spotting issue at their forthcoming contract negotiations. ECJAC also noted that if that issue was not resolved at that time, it would render a decision.

During the parties' negotiations the spotting issue was not settled. Accordingly, pursuant to their negotiating procedures, it was submitted to the National Negotiating Committee for final resolution. The Association thereafter withdrew from the Negotiating Committee its proposal with respect to spotting. Subsequently, in May, 1976, ECJAC rendered its decision on the merits. ECJAC's award eliminated all restrictions on spotting in Allegheny County.

The Union then brought an action in district court pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). The Union sought to have ECJAC's award set aside, and to enjoin spotting by the Allegheny County employers. The record reveals that the hearing for preliminary and permanent injunction was consolidated. The facts were not disputed. The district court, by order of April 6, 1977, denied injunctive relief and dismissed the Union's Complaint. The district court held that ECJAC had jurisdiction over the controversy (*i. e.* that the question was arbitrable), and that therefore ECJAC's award was binding. 430 F.Supp. 1258 (W.D.Pa.1977). We reverse.

## II

### A

■  Courts have a limited role in reviewing arbitration awards.[3] *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When an arbitrator has jurisdiction over a dispute, the merits of his award will be reviewed very narrowly. The arbitrator's award will be set aside only if it does not "draw its essence from the collective bargaining agreement.[4]" The award will not be disturbed unless it "can in [no] rational way be derived from the agreement . . . [or unless] there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop . . .." *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969).[5]

**1a.** The Eastern Conference Joint Area Committee is a joint labor-management committee, created under article 45 of the collective bargaining agreement, and charged with the resolution of certain disputes between employers and local unions.

**2.** Both the Union and the Association signed the ECJAC submission form. However, the fact that the Union disputed ECJAC's jurisdiction and argued the merits before ECJAC does not constitute a waiver of its jurisdictional objections. *Bakery and Confectionary Workers v. National Biscuit Co.,* 378 F.2d 918, 921 (3d Cir. 1967). *Cf., e. g.,* Fed.R.Civ.P. 12(b) (no special jurisdictional appearances are required in federal court).

**3.** Joint committee awards are reviewed under the same standards as binding arbitration awards. *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32 (3d Cir. 1968). *See Price v. Teamsters,* 457 F.2d 605 (3d Cir. 1972).

**4.** *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

**5.** An award may also be overturned if fraud, deceit, or breach by the union of its duty of fair representation is established. *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32, 38 (3d Cir. 1968). There are certain other limited grounds for vacating an arbitrator's award, such as partiality or other arbitrator misconduct, where the award violates a specific statu-

■ However, whether the arbitrator has jurisdiction over a particular dispute—*i. e.* whether the controversy is arbitrable—is a question for the court to decide. A jurisdictional decision by an arbitrator that he has authority to decide a dispute is subject to a much broader and more rigorous judicial review. *Bieski v. Eastern Automobile Forwarding Co., supra; Torrington Co. v. Metal Products Workers Local 1645,* 362 F.2d 677, 680 (2d Cir. 1966). *See John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). As we said in *Bieski*:

> If, however, the private decision complained of is a "jurisdictional" one—that a certain dispute will not be considered on its merits by the private decision-maker—then the court is a proper forum to review this decision on the basis of its analysis of the contract entered into by the parties.

396 F.2d at 38.

■ Since the jurisdiction of the arbitrator is contractually granted by the parties, the question as to whether a particular dispute is arbitrable necessarily depends on "whether the parties agreed to submit the dispute to arbitration." *Ludwig Honold Manufacturing Co. v. Fletcher, supra,* 405 F.2d at 1125 n. 2. *See Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Thus a reviewing court must in the first instance examine the jurisdictional predicate (*i. e.,* the contract provision) which purports to require the submission of a dispute to arbitration. The court does so to ascertain whether the parties intended that the controversy be included within the scope of the arbitration clause. In making this determination a court must be mindful of the strong presumption in favor of arbitrability contained in the *Steelworkers* triology.[6] Arbitrability "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 581, 80 S.Ct. at 1353. *See Controlled Sanitation Corp. v. District 128,* 524 F.2d 1324, 1328 (3d Cir. 1975). Nevertheless, an "arbitrator's decision that he has authority should not be accepted where the reviewing court can clearly perceive"[7] that the collective bargaining agreement does not grant him that authority. *See Torrington v. Metal Products Workers Local 1645, supra,* 362 F.2d at 680.

### B

The sole question[8] which we must answer is whether ECJAC had jurisdiction to grant the Association relief from the prohibitions on spotting. Such jurisdiction, if it exists, must be derived from the Maintenance of Standards Clause of the collective bargaining agreement (articles 6 and 44).[9] Those clauses provide that conditions of employment will be maintained at the highest standards in effect at the time of the signing of the agreement. However, articles 6 and 44 go on to state:

tory command, where the award is overly vague or ambiguous, or where the award violates public policy. *See Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 n. 27 (3d Cir. 1969). These circumstances, however, are presented here, and thus are not relevant to our review of ECJAC's award.

6. *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

7. *Torrington v. Metal Products Workers Local 1645,* 362 F.2d 677, 680 (2d Cir. 1966).

8. The appellant Union also raises questions with respect to the fairness and adequacy of the ECJAC procedure, and possible waiver by the Association of the right to an ECJAC determination. Given our disposition of the jurisdictional question, we do not reach the Union's other arguments.

9. The two sections are identical. At page 785 of this opinion we quote those provisions in full.

provisions of this section shall not apply to inadvertent or bona fide errors made by the Employer(s) or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of the error. If not corrected within ninety (90) days, such better conditions shall remain in effect. However, a request for relief from such error may be filed in writing with the appropriate Conference Area Committee.

The Joint Committee is given the authority to "determine whether and in what manner such better terms or conditions resulting from such error shall be continued or eliminated."

Thus, ECJAC has the authority—jurisdiction—to grant relief from the spotting restrictions *only* if those restrictions constitute an "inadvertent and bona fide error" as that term is used in articles 6 and 44. In the absence of any such "error", no jurisdiction can exist. As is evident from the discussion of our scope of review (Part IIA of this opinion, *supra*) we are not bound by ECJAC's implicit determination that it did have jurisdiction to resolve the issue submitted to it. Since this is a jurisdictional question, we may independently decide the reasonableness of ECJAC's interpretation of the term "error". *See Bieski v. Eastern Automobile Forwarding Co., supra. Bieski* involved a dispute concerning the seniority to be granted transferred employees when one carrier purchased the real estate and operating equipment of another. The labor contract in that case conferred authority on a Joint Committee to decide the controversy "[in] the event that the Employer ab-

sorb[ed] the business of another . . . carrier." 396 F.2d at 34. The Joint Committee's jurisdiction, therefore, hinged on whether there had been such an "absorption" of business. On review this court did not defer to the Committee's determination, but rather subjected the committee's jurisdictional decision to "full, broad review." *Id.* at 38. *See Humphrey v. Moore,* 375 U.S. 335, 345 n.8, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).[10]

As in *Bieski,* the jurisdiction of ECJAC in this case hinges on the interpretation of a single contractual term. The Association argues that, although the spotting restrictions have been in effect in Allegheny County since 1958,[11] they constitute an "error" since the Association only "realized in 1975 that it was a mistake to [acquiesce in the prohibitions] in light of current economic developments." Association Brief at 3. In effect, the Association invites us to hold that a long-standing and agreed-upon practice has been transformed into an "inadvertent and bona fide error"—which would form a jurisdictional predicate for arbitration—because a change in economic circumstances renders that practice a costlier one than had been anticipated.[12] We decline this invitation.

■ It is clear to us that the limitation on spotting was not an "inadvertent and bona fide error."[13] We are not persuaded—as apparently the district court was—that the term "error" was intended to include matters of economic impracticability or long-standing industry practices. Disputes concerning such matters or practices are normally and more properly the subject

10. In *Humphrey* the Court said:
    Reconciliation of these two provisions [of the contract] going to the power of the committee under the contract, itself presented an issue ultimately for the court, not the committee, to decide.
    375 U.S. at 345 n. 8, 84 S.Ct. at 370.

11. It is significant that the employers have acquiesced in those restrictions and complied with them since that date.

12. At no time either before ECJAC or before this court has the Association ever put forward any basis other than "economic disadvantage"

for asserting that the spotting prohibition was an "error".

13. We are mindful of the fact that our court "has consistently rejected invitations to inquire into arbitrability, where such inquiry would be coextensive with a determination of the merits of a controversy." *Local 719, Bakery & Confectionary Workers v. National Biscuit Co.,* 378 F.2d 918, 923 (3d Cir. 1967). That, however, is not the situation before us, since the ECJAC clearly has no authority to grant the requested relief unless there has been an "error".

of collective bargaining negotiations, where the relinquishment or continuation of such restrictions may well constitute the *quid pro quo* for some other contract objective. Apparently we do not stand alone in this assessment. ECJAC itself initially referred the parties to the negotiating table on this issue. It was only when the Association withdrew the issue from the Negotiating Committee after an impasse had developed [14] that ECJAC finally decided the spotting question.

Having concluded that the spotting prohibition in Allegheny County was not an "inadvertent or bona-fide error" within the meaning of the Maintenance of Standards Clause, we hold ECJAC lacked jurisdiction over the spotting dispute, and that therefore its award must be vacated.

### III

The order of the district court which denied injunctive relief to the Union and which dismissed the Union's complaint will be reversed. The case will be remanded to the district court with directions to vacate ECJAC's award, and for further proceedings, including the entry of an appropriate injunction.

14. Plaintiff's Exhibit 9—"Items in Dispute" between the Union and the Association during their March, 1976 contract negotiations—reveals that the parties were "deadlocked" on the Association's proposed additions to the contract, one of which provided:

> Employer: ADD: The Employer shall have the unlimited and unrestricted right to spot trailers for loading and/or unloading without an accompanying employee.

The other provided:

> *Employer*—proposes that right to spot be available in all local union areas.

The notations that appear in conjunction with each proposal are consistent in that they reveal an absence of agreement. Comments reciting "deadlocked", "no agreement", "Company says hold", and "Company stays" are handprinted beside the respective proposals.