591 F.2d 211
 100 L.R.R.M. (BNA) 2421, 85 Lab.Cas. P 11,068
 TEAMSTERS LOCAL UNION NO. 30, and Tom Sever and all others
similarly situated, Appellants,
v.
HELMS EXPRESS INC., a Div. of Ryder Truck Lines, and the
Eastern Conference of Teamsters.
 No. 78-1404.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Nov. 17, 1978.
Decided Jan. 5, 1979.
 
 Paul D. Boas, Ronald A. Berlin, Berlin, Boas, Isaacson, Logan & Sharon, Pittsburgh, Pa., for appellants.
 Mark S. Dichter, Francis M. Milone, Morgan, Lewis & Bockius, Philadelphia, Pa., Charles P. O'Connor, Washington, D. C., for appellee Helms Express, a division of Ryder Truck Lines, Inc.
 Hugh J. Beins, Jonathan G. Axelrod, Bethesda, Md., for appellee Eastern Conference of Teamsters.
 Before ALDISERT and HUNTER, Circuit Judges, and GERRY, District Judge.*
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This appeal requires us to decide the propriety of an arbitration award handed down by the Eastern Conference Joint Area Committee (ECJAC), a joint union-employer committee designed to resolve disputes in the trucking industry in a fifteen state area in the Eastern United States. The district court dismissed the complaint seeking to set aside the award which had denied a grievance brought by International Brotherhood of Teamsters Local Union No. 30 and certain of its members against Helms Express, Inc., a division of Ryder Truck Lines. The grievants have appealed. We affirm.
 
 
 2
 Appellants accept the general principle that courts should refuse to review the merits of an arbitration award where the parties have contractually agreed to be bound by the arbitrator's decision. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), but seek to apply three exceptions to this precept. First, they assert that the ECJAC award is invalid because it does not "draw its essence from the collective bargaining agreement" and therefore is the product of an abuse of arbitral authority; second, that an ECJAC award should not deserve the same degree of judicial deference as an award by a third party arbitrator; and, third, that the award is invalid because the Eastern Conference breached its duty of fair representation, Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).
 
 I.
 
 3
 To understand the nature of the grievance and the arbitration machinery, it is necessary first to examine the controlling provisions of the collective bargaining agreement entered into by the Teamsters, including Local 30, of which Tom Sever, the individual grievant, is a member. Helms, which employs Sever, and Local 30 are parties to the National Master Freight Agreement (NMFA) and the Joint Council No. 40 Local Cartage Supplemental Agreement. The NMFA is the product of multi-employer bargaining between Trucking Employers, Inc. and the Teamsters National Freight Industry Negotiating Committee, which represents local unions, including Local 30, affiliated with the International Brotherhood of Teamsters. Both the local unions and the Teamsters National Freight Industry Negotiating Committee are parties to the NMFA. This industry-wide agreement is supplemented by certain local agreements, which specify additional terms and conditions applicable only to specified employers and local unions. In the instant case, the NMFA incorporates the supplement between the Western Pennsylvania Motor Carriers Association and the Teamsters Joint Council No. 40 Freight Division (Supplement), representing specified local unions including Local 30. The NMFA and the Supplement constitute the entire collective bargaining agreement between the parties to that contract and contain a mandatory procedure for the resolution of all disputes between the parties.
 
 
 4
 Article 45 of the Supplement creates a joint area grievance committee, known as the Western Pennsylvania Teamsters and Employers Joint Area Committee, consisting of three representatives appointed by the employers. It also creates the Eastern Conference Joint Area Committee, similarly consisting of delegates of the local unions and the employers from the Eastern Conference area. Under Section 3 of Article 45 these two committees are charged with the responsibility of settling disputes which cannot be settled between the employer and the local union in the earlier stages of the grievance machinery.
 
 
 5
 The mechanics of the grievance machinery are set forth in Section 1 of Article 46 of the Supplement. That section specifies several preliminary steps to be followed by the parties in an attempt to adjust the matter short of a hearing. In the event the matter cannot be so adjusted, a hearing is held before the Western Pennsylvania Joint Area Committee which attempts to decide the matter by majority vote. If a majority vote is reached, no appeal may be taken and the decision is final and binding on both parties. If the Western Pennsylvania Joint Area Committee deadlocks, the matter is referred to ECJAC which, again by a majority vote, attempts to settle the dispute.[1] If the dispute is settled, the decision of ECJAC is final and binding on both parties and there is no right to a further appeal.[2] Section 1(a) of Article 8 provides that requests for interpretation of the NMFA shall be submitted directly to the Conference Joint Area Committee (here, ECJAC) for the making of a record on the matter, after which the matter shall be immediately referred to the National Grievance Committee for resolution. Otherwise, the contract provides that all factual grievances or questions of interpretation arising under the Supplement, or factual grievances arising under the NMFA, shall be processed in accordance with the grievance procedure of the Supplement. Thus, a grievance which a local union chooses to process through the local grievance machinery can be referred to the National Grievance Committee Only if the Conference Joint Area Committee deadlocks.
 
 
 6
 Unlike more restrictive arbitration provisions found in some labor agreements, the scope of the authority of the Joint Area Committees under the NMFA is extremely broad. The function of the Joint Area Committees, as set forth in the Supplement, is to "settle" disputes. In Section 3 of Article 45, it is stated that "it shall be the function of the various Committees above referred to to settle disputes which cannot be settled between the employer and the local union in accordance with the procedures established in Section 1 of Article 46." Appendix at 63.
 
 II.
 
 7
 The instant dispute arises over the application of Article 20 of the NMFA, which states, in pertinent part:
 
 
 8
 The Union, its members and the Employer agree at all times as fully as it may be within their power to further their mutual interest and interests of the trucking industry and the International Brotherhood of Teamsters nationwide. The Union and the Employer recognize the principle of a fair day's work for a fair day's pay; that jobs and job security of employees working under this Agreement are best protected through efficient and productive operations of the Employer and the trucking industry. The Employer may establish reasonable work standards which shall take into account all factors relating to the work assignment, run, terminal and territorial operational conditions, subject to agreement and approval with the Local Union, and to be filed for approval with the Conference Joint Area Committee.
 
 
 9
 Appendix at 52. The grievance involves the implementation of productivity standards by Helms, Local 30's objection to those standards, and a subsequent determination of their validity by ECJAC.
 
 
 10
 The complaint filed in the district court alleges that on or about October 22, 1976, appellant Sever was informed by Helms that his productivity fell below a certain standard, and that he was being suspended without pay for a period of one day. Approximately ten other employees received similar suspensions for failure to meet the productivity standards. It is alleged that the productivity standards or measurement program were enacted unilaterally by Helms without negotiation, agreement, or approval by the local union. It is also alleged that this productivity standard or measurement program did not take into account all the factors referred to in Article 20.
 
 
 11
 After being informed of the deficiencies in their productivity, Sever and the other employees complained to Local 30, which filed grievances on their behalf. Local 30 and Helms agreed that Sever's grievance would serve as the pilot grievance, with its result to be controlling upon the other employees. The grievance procedure set forth in the Supplement was followed. The Western Pennsylvania Joint Area Committee deadlocked, however, and the case was referred to ECJAC.
 
 
 12
 The grievance was then presented at an ECJAC meeting in Virginia in April 1977. After hearing a presentation by both Helms and Local 30, ECJAC rendered the following decision:
 
 
 13
 The panel in executive session, motion made, seconded and carried that, due to the company's failure to obtain agreement with the local union or approval of this committee prior to putting into effect the productivity measurement program, the specific claims listed in this case are upheld on the basis of 8-hours' pay for each day of suspension. The committee further ruled that the productivity measurement program, as presented, is not in violation of the contract and may be implemented beginning May 1, 1977. Cost split.
 
 
 14
 Appendix at 6, 13.
 
 
 15
 Under the terms of the Supplement, this decision by ECJAC was final and binding upon the parties, and no appeal could be taken. However, Local 30's president wrote to the Teamsters International Union, and attempted to appeal the decision and obtain a rehearing. The matter was referred by the International back to ECJAC, which ruled that the original decision was "final and binding." Appendix at 6-7, 16-17.
 
 
 16
 After exhausting the contractual grievance procedure without obtaining a favorable result, Local 30 and Sever filed a complaint in the district court pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), seeking to set aside the decision of ECJAC. The complaint alleged that the productivity standards were enacted in violation of the NMFA; that the Eastern Conference violated its "duty of fair representation" to Local 30 and its members by its "conscious collusion" with the employer representatives on the ECJAC, and by failing to uphold the grievance of the plaintiffs or to consider the collective bargaining agreement; that the decision of ECJAC was beyond its authority under the NMFA, in that it was not adequately grounded in nor did it draw its essence from the basic collective bargaining agreement; and that the ECJAC decision was arbitrary, capricious and internally inconsistent because the procedures employed failed to meet basic standards of fairness, Appendix at 7-8.
 
 
 17
 Local 30 and Sever filed an application for a temporary restraining order and a preliminary injunction. A hearing was held before Judge Daniel J. Snyder, Jr., at which certain evidence was introduced and oral argument by counsel was had. Thereafter, appellants Local 30 and Sever withdrew their request for a temporary restraining order. Subsequently Helms and Eastern Conference filed motions to dismiss, which were granted by Judge Barron P. McCune.
 
 III.
 
 18
 In arguing that the ECJAC award is invalid because it does not "draw its essence from the collective bargaining agreement," appellants urge that we apply the decision in International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Ass'n, 574 F.2d 783 (3d Cir. 1978), as controlling precedent here. Appellants characterize the facts there as "almost identical to the matter now before this court." Appellants' brief at 2. We disagree. Appellants exaggerate the limited precedential effect of that case. The narrow issue presented there was the interpretation of a collective bargaining agreement clause that gave ECJAC authority over "inadvertent or bona fide errors made by the Employer(s) or the Union in applying the terms and conditions" of the agreement. 574 F.2d at 788. The background of alleged "inadvertent or bona fide error" was the common industry "spotting" practice whereby a carrier may instruct a driver to leave his trailer at a specified location, and not to remain with it during loading or unloading. Although "spotting" is a widespread practice, it had not been followed in Allegheny County, Pennsylvania, where it has traditionally been the subject of collective bargaining discussions. The record indicated that, with the exception of a few designated terminal facilities, the peculiar Allegheny County practice had been "in existence since the 1958 collective bargaining agreement." Id. at 785. Accordingly, we held that a practice of almost 20 years duration did not amount to an "inadvertent or bona fide" error, thus divesting ECJAC of jurisdiction under the proffered theory.
 
 
 19
 Moreover, in Teamsters Local 249 we reiterated the basic precepts which govern judicial review of labor arbitration awards: (1) courts have a limited role in reviewing an arbitrator's award; (2) the award will be set aside only if it does not draw its essence from the collective bargaining agreement; and (3) it will not be disturbed unless it can in no rational way be derived from the agreement or unless there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop. Id. at 786 (citations omitted).
 
 IV.
 
 20
 Measured by these precepts, we agree with the district court that ECJAC had jurisdiction to review the particular grievance in the case at bar, because the award can "in (a) rational way be derived from the agreement, viewed in the light of its language, its context, and . . . other indicia of the parties' intention." Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).
 
 
 21
 Article 20 of the NMFA provides: "The Union and the Employer recognize the principle of a fair day's work for a fair day's pay." Appendix at 52. Article 47 allows an employer to discharge or suspend employees only for "just cause," Appendix at 64; clearly poor performance and productivity on the part of an employee would qualify as "just cause."
 
 
 22
 The agreement permits each employer to establish reasonable productivity standards and assumes that a local union would agree to and approve a reasonable productivity standard. It explicitly provides that following the local's approval, the standard shall "be filed for approval with the Conference Joint Area Committee." If ECJAC must ratify the local union's approval, it seems to be a rational interpretation of the contract that if the local union does not approve, as here, ECJAC nevertheless has authority to review the productivity standard prior to implementation by the employer. To hold otherwise would vest in the local union an arbitrary, unreviewable right to disapprove productivity standards under Article 20 of the NMFA. ECJAC's award here is merely action that decides "unforeseen or unresolved problems arising out of gaps . . . in the contract," a practice we specifically approved in Price v. International Brotherhood of Teamsters, 457 F.2d 605, 610 (3d Cir. 1972).
 
 V.
 
 23
 Although appellants concede that both the Supreme Court and this court have approved decisions rendered by the trucking industry's joint labor-management grievance committee, it nevertheless argues that we should not accord to ECJAC "the same, identical degree of judicial deference customarily accorded awards rendered by impartial arbitrators when challenged by employees." Appellants' brief at 14. Assuming that Local 30, a party to the NMFA, is not estopped from challenging a provision in the collective bargaining agreement and this is a very generous assumption we will not tarry long on this point because it is no longer an open question. "Joint committee awards are reviewed under the same standards as binding arbitration awards. General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32 (3d Cir. 1968). See Price v. Teamsters, 457 F.2d 605 (3d Cir. 1972)." Teamsters Local 249, supra, 574 F.2d at 786 n.3. Moreover, we had previously stated that:
 
 
 24
 It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award.
 
 
 25
 United Mine Workers of America, District No. 2 v. Barnes & Tucker Co., 561 F.2d 1093, 1096 (3d Cir. 1977).
 
 VI.
 
 26
 Finally, we address appellants' contention that the district court erred in dismissing their action against the Eastern Conference for breach of the duty of fair representation. Appellants correctly premise this argument with the proposition that a court may review the merits of an arbitration award where the union presenting the grievance has breached its duty of fair representation, Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), and that section 301 of the Labor Management Relations Act may provide the jurisdictional basis for employee suits against employers and labor organizations. That section provides that "(s)uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court . . . ." 29 U.S.C. § 185(a). The prerequisite for jurisdiction is a contract between an employer and a labor organization. Smith v. Evening News Ass'n, 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). However, § 301 creates federal jurisdiction only over parties to the contract, and federal jurisdiction under § 301 is limited to "(s)uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185. Thus in Aacon Contracting Co. v. Ass'n of Catholic Trade Unionists, 178 F.Supp. 129 (E.D.N.Y.1959), claiming that the defendant union attempted to compel plaintiff to breach a collective bargaining agreement it had with another union, plaintiff attempted to assert federal jurisdiction over the dispute even though there was no contractual relationship between plaintiff and defendant. The complaint was dismissed and the Second Circuit affirmed, 276 F.2d 958 (2d Cir. 1960), on the opinion of the trial judge: "The language of the statute is explicit. It specifically refers to suits for violation of contracts between an employer and a labor organization. In this case there is no contractual relationship between the parties." 178 F.Supp. at 130. While clearly this does not prevent Sever, as an individual member of a signatory union from claiming under § 301, Smith v. Evening News Ass'n, supra, 371 U.S. at 200, 83 S.Ct. 267, he may only bring suit against the parties signatory to the agreement, and here the Eastern Conference is not a party.
 
 
 27
 The Eastern Conference is not a party to any collective bargaining agreement and represents no employees directly; it has never been a party to any contract with Helms. The NMFA and Supplement specifically state that only the Teamsters National Freight Industry Negotiating Committee and specific local unions are parties to the Agreement, Appendix at 38. Similarly, the preamble to the Supplement lists the parties by name, indicating only that they are affiliated with the Conference and the International Union. Neither the Conference nor the International are signatories. Thus, because the Eastern Conference is not a party to the contract, the district court lacked jurisdiction under § 301 over the Conference.
 
 
 28
 More important, the duty of fair representation is implied from the congressional grant of exclusive recognition accorded the labor organization selected by a majority of the employees in an appropriate bargaining unit. 29 U.S.C. § 159(a). The duty of fair representation imposes on the statutory representative a duty to serve the interest of all bargaining unit employees without hostility to any. Steele v. Louisville & Nashville Railroad, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The duty prohibits fraud, deceitful or dishonest conduct which "could not be otherwise regulated by the substantive federal law." Motor Coach Employees v. Lockridge, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971); Humphrey v. Moore, 375 U.S. 335, 348, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). But the parties to the NMFA, including Local 30, did not make the Conference the statutory representative of any employees. The contract states that "the National Union Committee and Local Unions . . . are the exclusive representatives of all employees" covered by the Agreement. Appendix at 40, 41-42. The contract clearly obligates the local unions, not the Conference, to process the grievances of all employees within their jurisdiction, Appendix at 63. As the complaint alleges, it is clear that Local 30 "has been the exclusive collective bargaining representative of the individual plaintiffs," Appendix at 3, and, accordingly, it is Local 30 and not the Eastern Conference that owes a duty of fair representation to its members employed at Helms. Walters v. Roadway Express, Inc., 400 F.Supp. 6, 16 (S.D.Miss.1975), Aff'd in pert. part, 557 F.2d 521 (5th Cir. 1977); Brooks v. Southwestern Transportation Co., 97 L.R.R.M. 2616, 2618 (N.D.Tex.1978); Hughes v. Shoreline Beverage Distributing Co., 85 L.R.R.M. 2071, 2072 (S.D.Cal.1973).
 
 VII.
 
 29
 Because this case follows quickly on the heels of Teamsters Local 249, it is imperative that we emphasize again both the limited precedential effect of that case and the oft-stated imperative of the Supreme Court: " 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (footnote omitted). Thus, the arbitral forum is the primary arena for the settlement of labor disputes." United Steelworkers of America v. NLRB, 530 F.2d 266, 273 (3d Cir.) (footnote omitted), Cert. denied sub nom. Dow Chemical Co. v. United Steelworkers of America, 429 U.S. 834, 97 S.Ct. 100, 50 L.Ed.2d 100 (1976). Arbitration is the favored alternative forum for dispute resolution. Gateway Coal Co. v. UMWA, 414 U.S. 368, 377, 382, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 226, 82 S.Ct. 1328, 1345, 8 L.Ed.2d 440 (1962) (Brennan, J., dissenting) ("The arbitration process . . . (is) a kingpin of federal labor policy"); Arlan's Department Store of Michigan, Inc., 133 N.L.R.B. 802, 808 (1961), The Supreme Court, 1969 Term, 84 Harv.L.Rev. 30, 199 (1970); Note, Labor Injunctions, Boys Markets, and the Presumption of Arbitrability, 85 Harv.L.Rev. 636, 637 (1972).
 
 
 30
 We reiterate the basic tenets of contemporary labor policy as have been summarized by the Supreme Court and this court: (a) today's interdependent and technologically advanced economy dictates that labor-management relations be as peaceful as possible; (b) where labor and management agree on a forum for the peaceful resolution of disputes, that agreement should be honored; (c) arbitration is the favored alternative forum for dispute resolution; and (d) congressional emphasis in labor legislation has shifted from protection of the nascent labor movement to the encouragement of collective bargaining and to administrative techniques for the peaceful resolution of industrial disputes. See cases and authorities collected in Steelworkers v. NLRB, supra, 530 F.2d at 275; See also Republic Steel Corp. v. U.M.W.A., 570 F.2d 467, 473 (3d Cir. 1978).
 
 
 31
 The joint labor-management committees created under the collective bargaining agreements between the Teamsters and the freight industry reflect a mature and enlightened method to resolve industrial disputes. These institutions implement the national labor policy as mandated by Congress and will be given maximum respect by the courts.
 
 
 32
 The judgment of the district court will be affirmed.
 
 
 
 *
 Honorable John F. Gerry, of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Discharge cases are handled differently in that the local union may appeal the matter to an independent arbitrator, rather than proceeding to ECJAC
 
 
 [2]
 The NMFA also creates in Section 1(b) of Article 8 a National Grievance Committee composed of an equal number of employer and union representatives. Matters which are deadlocked after the completion of the prior steps of the grievance procedure are referred to the National Grievance Committee for resolution. When the National Committee deadlocks, the parties may resort to economic pressure or litigation