**David L. SHOEMAKER**

v.

**Arthur A. ALLENDER, Frank Fischel, Ronald J. Max, Barry Giacobbe, Carl Held, Queen City Lodge No. 10, Fraternal Order of Police, and City of Allentown.**

**Civ. A. No. 81–2018.**

United States District Court,
E. D. Pennsylvania.

Aug. 26, 1981.

Richard J. Orloski, Allentown, Pa., for plaintiff.

Edward J. Zamborsky, Allentown, Pa., for Allender, Fischel, Max, Giacobbe, Held and Queen City Lodge # 10, Fraternal Order of Police.

Kathryn W. Mayer, Asst. City Sol., Allentown, Pa., for City of Allentown.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

During an apparently routine burglary investigation in Allentown, Pennsylvania, plaintiff, a police officer with that city, came into contact with a confidential informer, who advised plaintiff that he could secure video tapes of various prominent local citizens engaged in illegal conduct. Assuming for present purposes the veracity of plaintiff's allegations *Walker Process Equipment Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), plaintiff reported this exchange to his shift supervisor, who scheduled a meeting with *his* superiors and later instructed plaintiff to continue the probe, during which plaintiff contacted agents from the Federal Bureau of Investigation to corroborate information received from the confidential informer. During the next few weeks plaintiff reported the results of his inquiry to his supervisor. In April of 1980 plaintiff apparently learned of police corruption, which he reported to defendant Allender, the chief of police, who shortly thereafter directed plaintiff to discontinue the investigation, advised him that he had acted improperly in reporting any allegations of police misconduct to the FBI, and several days later, suspended him from the police force for ten days.

In early May of 1980 plaintiff requested defendant Fraternal Order of Police (FOP) to represent him in a grievance against the city. The FOP declined, and defendant Allender denied the grievance. A month later plaintiff requested voluntary submission of the matter to arbitration. During the following months plaintiff and the City of Allentown negotiated a settlement, which included submission to arbitration, the offer for which the city later retracted.

Plaintiff then commenced this litigation under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and alleged not only that defendants Allender and the city disciplined him for exercising his right to speak with the FBI concerning police corruption during the course of an investigation, but also that the FOP, along with defendants Max, Giacobbe and Held, all police officers with the City of Allentown, retaliated against him for exercising his right to free speech by refusing to represent plaintiff in the grievance process. When defendants realized that plaintiff might implicate them, plaintiff claims, they conspired to prevent him from exercising his First Amendment right by persuading the city to withdraw the option of arbitration from him and thus

denied him due process of law and jeopardized his prospect for professional promotion. Furthermore, plaintiff considers the actions of the city and defendants Allender and Fischl, the mayor, as a denial of his constitutional right to free association with the FOP and the right to fair representation therefrom. All defendants have moved to dismiss. Fed.R.Civ.P. 12(b)(6).

Initially, all defendants argue that plaintiff's communications with the FBI fall outside the protection of the First Amendment and that, therefore, plaintiff has alleged no deprivation of a constitutional right upon which to predicate his Section 1983 claim. Undoubtedly, an individual does not sacrifice or forfeit his First Amendment rights when he becomes a public employee. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *See also Ruppert v. Lehigh County*, 496 F.Supp. 954 (E.D.Pa.1980) and *Farkas v. Thornburgh*, 493 F.Supp. 1168 (E.D.Pa. 1980), *aff'd*, 642 F.2d 441 (3d Cir. 1981). However, the nature of employment, such as law enforcement, may permit reasonable regulation of those rights. Essentially, the need of the government, as an employer, to provide public services efficiently must be balanced against the employee's right to comment upon matters of public concern. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Various considerations merit attention and include the nature and proximity of the employment relationship between the plaintiff and the subject of criticism, the public importance of the issue evoking comment and the disruptive impact of the statements upon their relationship specifically and the organization generally. *See Trotman v. Board of Trustees*, 635 F.2d 216 (3d Cir. 1980).

In *Pickering*, a high school teacher wrote a letter to a local newspaper and criticized the manner in which the school board and superintendent had handled a recent bond issue. The Supreme Court, holding that the school board's dismissal of the teacher violated his First Amendment right of free speech, considered the lack of a close working relationship that would require "personal loyalty and confidence" necessary to the proper functioning of the organization. The Court further advised that where an employee *publicly* criticizes his superior in a way that undermines the "personal and intimate" nature and effectiveness of the working relationship, a different conclusion might be warranted. *Id.* 391 U.S. at 569–70, 88 S.Ct. at 1735–36.

In *Sprague v. Fitzpatrick*, 546 F.2d 560 (3d Cir. 1976), such a situation developed. The first assistant district attorney *publicly* castigated and impugned the integrity of the district attorney. The Court of Appeals, discounting to a certain extent the public importance of the issue, examined the disruptive impact upon their relationship in light of the "public uproar engendered by [the public] pronouncements", *id.* at 565, and concluded that the first assistant's remarks had thoroughly undermined and, in fact, destroyed the employment relationship and, therefore, lacked First Amendment protection.

In *Roseman v. Indiana University of Pennsylvania*, 520 F.2d 1364 (3d Cir. 1975), *cert. denied*, 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976), an associate professor reprehended the acting chairman of her department, which later did not renew her contract. The Court of Appeals relied upon the absence of any public importance to the issue and the direct disruptive impact upon the department to conclude that the teacher's comments did not enjoy First Amendment protection.

In the case at bar, the presence of two factors requires the conclusion that the First Amendment protects plaintiff's remarks. He disclosed confidential information to a federal investigatory agency relating to corruption in the Allentown police department, a matter of grave public importance. In addition, plaintiff did not expose his confidential information to the public in a manner calculated to cause a sensational public commotion that would have seriously impaired or destroyed his employment relationship with the department specifically or the operation thereof

generally. In fact, he privately reported his information to the FBI as part of a joint official investigation into municipal corruption. *See Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). The parties vigorously dispute whether the FBI and the Allentown police department were involved in a joint investigation, whether a procedure existed within the department for reporting intra-departmental corruption and whether plaintiff followed the proper procedure thereafter. Simply, plaintiff says he did, and defendants say he did not. Presently, the truth of plaintiff's allegations must be assumed. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Accordingly, plaintiff has alleged the deprivation of a constitutionally protected right. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Furthermore, whether the discipline imposed upon plaintiff resulted from a desire by defendants to retaliate against plaintiff for speaking to the FBI or from the need to punish plaintiff for infracting internal police procedure involves issues of motive and intent, which cannot be decided by the Court on a motion to dismiss.

■ Additionally, all defendants inveigh against plaintiff's lack of specificity in pleading. Clearly, plaintiff has a duty to plead violations of his civil rights with a greater degree of precision than federal courts otherwise require. *See Hall v. Pennsylvania State Police,* 570 F.2d 86 (3d Cir. 1978) and *Boddorff v. Publicker Industries, Inc.,* 488 F.Supp. 1107 (E.D.Pa.1980) and compare with *Beascoechea v. Sverdrup & Parcel & Associates,* 486 F.Supp. 169 (E.D. Pa.1980) (complaint normally need contain only a "short and plain statement of the facts"). Plaintiff must identify the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor. *Boddorff v. Publicker Industries, Inc., supra.* Moreover, plaintiff must specify "direct personal involvement by the defendant in conduct depriving [him] of his rights as well as active knowledge or acquiescence". *Ressler v. Scheipe,* 505 F.Supp. 155, 156 (E.D.Pa.1981), *Biancone v.*

*Kramer,* 513 F.Supp. 908 (E.D.Pa.1981). True, plaintiff could have articulated with greater detail the number of conspiracies and who participated in which one. Apparently, one conspiracy, involving all defendants, concerned the ten-day suspension in retaliation for plaintiff's contacts with the FBI relating to police corruption. Another conspiracy consists of the refusal of the FOP and its officers to represent plaintiff as retaliation for speaking to the police chief. To avoid future confusion, to protect defendants from defending against charges not directed at them and to apprise them of the facts supporting the allegations, plaintiff shall amend the complaint and identify separately and specifically each conspiracy according to the standard described in *Boddorff* and *Ressler, supra.* Plaintiff's complaint also is unclear as to the theory of naming the City of Allentown as a defendant. Plaintiff shall amend the complaint to identify precisely the "policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" which deprived him of a constitutional right. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Skrocki v. Caltabiano,* 511 F.Supp. 651 (E.D.Pa.1981). *See also Skrocki v. Caltabiano,* 505 F.Supp. 916 (E.D.Pa.1981), *Carey v. Beans,* 500 F.Supp. 580 (E.D.Pa.1980), *aff'd,* 659 F.2d 1065 (3d Cir. 1981), and *Ruppert v. Lehigh County, supra* (allowing amendment of civil rights complaint to plead more specifically), and Fed.R.Civ.P. 15(a).

■ Defendants Allender, Fischl and the City of Allentown (the city defendants) next contend that they did not deny plaintiff due process of law and in support thereof offer affidavits from Allender and Fischl. Consideration of material outside of the pleadings requires the Court to treat that part of the motion as one for summary judgment, *Moreland v. Western Pennsylvania Interscholastic,* 572 F.2d 121 (3d Cir. 1978), *Mortensen v. First Federal Savings & Loan Association,* 549 F.2d 884 (3d Cir. 1977), Fed.R.Civ.P. 12(b), which may be granted where no genuine issue of material

fact exists and the moving party is entitled thereto as a matter of law. *Burke v. Leader Dogs for the Blind,* 516 F.Supp. 1374 (E.D.Pa.1981), *Hollinger v. Wagner Mining Equipment Co.,* 505 F.Supp. 894 (E.D.Pa. 1981). Fed.R.Civ.P. 56(c). The city defendants argue that the disciplinary procedures against plaintiff comported with the provision of Pennsylvania's civil service law, 53 P.S. § 39408 and the collective bargaining agreement between the city and the FOP and that plaintiff's incorrect choice of invoking the grievance procedure rather than the statutory appeals system accounted for his inability to redress his complaints. Because plaintiff should have pursued the appeals procedure, defendants contend, the conspiracy thwarting his efforts to grieve his suspension becomes irrelevant. However, plaintiff has alleged that defendants conspired to prevent him from processing his problem through proper channels. Whether they did constitutes a genuine issue of material fact precluding entry of summary judgment.

Next, defendants Allender and Fischl argue that as government officers they are entitled to qualified immunity. *See, for example, Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) and *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In affidavits they assert their good faith belief in the legality of their conduct and a disclaimer of any involvement or knowledge of the entire affair. The legal conclusion of "good faith" cannot be established by affidavit. *See Wire Mesh Products, Inc. v. Wire Belting Association,* 520 F.Supp. 1004 (E.D.Pa.1981) and *Carey v. Beans, supra.* Likewise, motive and intent cannot be resolved in a motion for summary judgment, and as such comprise genuine issues of material fact. Plaintiff has alleged knowledge and participation by these defendants, whose denial thereof frame the issues as "disputed", and as "material" issues, prevent entry of summary judgment.

Additionally, defendants Max, Giacobbe, Held and the FOP (the other defend-

ants) argue that they did not act under color of state law. However, even if defendants Allender and Fischl enjoy a qualified immunity, joint participation in a conspiracy with them imbues the other defendants with "color of state law". *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). To the extent that the other defendants raised issues formally in their motion without briefing them, the arguments will be deemed to have been abandoned. *See* E.D.Pa. Local R.Civ.P. 20(c) ("every motion not certified as uncontested shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion"). *Cf. Price v. Inland Oil Co.,* 646 F.2d 90 (3d Cir. 1981) (plaintiff's failure to include a theory of liability in a pre-trial memorandum, in violation of local rules, allows the Court to disregard it at trial).