Charles J. KOBIELNIK

v.

UNION CARBIDE CORPORATION.

Civ. A. No. 78–2552.

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1981.

**29**

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Charges by defendant, Union Carbide, that plaintiff accidentally delivered nitrogen gas to an argon tank owned by its customer, Grove Manufacturing Company (Grove), led to an investigation of the incident. Upon completion thereof, plaintiff was informed by his employer, Eastern States Transportation Company, Inc. (Eastern), that defendant forbade him from continuing to haul defendant's products. This effectively cost plaintiff his job since all of Eastern's truck-leasing work is contracted for by defendant. Plaintiff thereafter instituted suit against his union, Eastern and Union Carbide, alleging a breach of the duty of fair representation. That suit was dismissed due to plaintiff's failure to allege that he had exhausted internal union procedures prior to its institution. *See Kobielnik v. International Brotherhood of Teamsters, Chauffeurs and Helpers of America*, 470 F.Supp. 125 (E.D.Pa.1979).

Contemporaneous with the filing of that suit, plaintiff charged defendant, in this suit, with tortious interference with contractual rights. *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978). Plaintiff here complains that defendant improperly caused Eastern to breach its contract, i.e., collective bargaining agreement, with him by requesting that he no longer deliver its products. Since defendant knew that it was the sole source of Eastern's truck driver jobs, plaintiff reasons that Eastern's inability to provide him with appropriate employment constituted a *de facto* breach of contract for which defendant is responsible. Defendant, moving for summary judgment, asserts that there was no breach of contract between Eastern and plaintiff, but, if there was, that defendant's actions were motivated by a good faith desire to prevent future misdeliveries and to preserve customer relations.

Plaintiff, in order to withstand the motion, must show that defendant's actions were "improper" and that they "caused" Eastern "not to perform the [collective bar-

S. Robert Levant, Philadelphia, Pa., for plaintiff.

Roger D. Susanin, Bala Cynwyd, Pa., for defendant.

gaining] contract." *See Restatement of Torts (Second)* § 766 as adopted by Pennsylvania in *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1961). Defendant argues that whether Eastern failed to perform its collective bargaining agreement with plaintiff requires reference to the determination made by the Eastern Conference Joint Area Committee (ECJAC), an employer-employee entity, established by the contract. It held that plaintiff had no "claim for work at Union Carbide but the company is obligated to allow [him] to perform any other work they have in line with his seniority". Hence, ECJAC did not consider plaintiff's inability to haul defendant's products as a breach of the Eastern-Union collective bargaining agreement, this notwithstanding the lack of any available work for plaintiff.

Defendant asseverates that our scope of review of that decision must be limited and accorded the same degree of deference as are awards from arbitrators. Since that scope of review is "narrow in the extreme", *Amalgamated Meat Cutters & Butcher Workers of North America, Local 195 v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir. 1975); *International Ladies Garment Workers Union, Local No. 111 v. DeeVille Blouse Co., Inc.,* 486 F.Supp. 1253, 1254 (E.D.Pa.1980), defendant argues that we are essentially bound by ECJAC's finding that there was no breach of contract.

■ A court's review of a labor-management grievance committee's decision, such as ECJAC, is "reviewed under the same standard as binding arbitration awards", *Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d 211, 216 (3d Cir. 1979), only if it represents the *"parties* chosen instrument for the definitive settlement of grievances." *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss and Co., Inc.,* 372 U.S. 519, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) (emphasis added). Here, neither side contends that defendant was a party to the collective bargaining agreement providing for the ECJAC machinery. Moreover, defendant

has not articulated any credible reason why we should extend the "general principle" of refusing to review an arbitration award to which the "parties have contractually agreed to be bound" to a situation where defendant is not a party to the contract and diversity jurisdiction is invoked rather than jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d at 212. The case at bar raises considerations of tortious interference with contractual rights; the cases articulating a narrow standard of review for ECJAC-type decisions all arise under § 301.

Defendant's argument that there was no breach for which it is responsible is based *solely* upon ECJAC's determination that Eastern did not breach its collective bargaining agreement with plaintiff. As such, defendant apparently seeks to establish, although it does not so articulate, a collateral estoppel bar to the issue of whether there was a breach of plaintiff's contract, thereby taking advantage of the ECJAC decision. The bar which we are asked to impose would prevent any greater degree of scrutiny of ECJAC's decision than we would employ if this case arose under § 301. However, because we disagree with the defendant's understanding of the ECJAC decision and its effect on this litigation, we will deny the motion for summary judgment.

■ The reason for the narrow scope of review with which courts consider awards of arbitrators and joint employer-employee committees is based upon the fact that the parties have "bargained for" the decisionmaker. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960). Federal labor policy favors the amicable resolution of disputes by the means selected by the parties, their agreement should be honored in court. *United Mineworkers of America, No. 2 v. Barnes & Tucker Co.,* 561 F.2d 1093, 1096 (3rd Cir. 1977). *See generally, Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d at 218, and *United Mine Workers*

*of America District No. 5 v. Consolidated Coal Co.*, 666 F.2d 806, 809–10 (3d Cir. 1981). In the case at bar, defendant never agreed to be bound by ECJAC's decisions. In addition, neither plaintiff nor his representative agree that an ECJAC decision could be used in subsequent proceedings by strangers to the contract. In short, defendant was not a party to the contract, did not bargain with plaintiff prior to the formation thereof and neither gained nor gave up anything in order to consummate the contract. Defendant is, in all respects, a stranger to the contract. Federal labor policy, which imposes the narrow scope of review on arbitration awards, is not directly implicated under these facts. As noted above, plaintiff is in court pursuant to diversity, not § 301, jurisdiction. This difference is crucial since the § 301 plaintiff benefits from, and is bound by, federal labor policy as expressed through Congressional action and mandates. Litigation conducted by tort plaintiffs, on the other hand, is not imbued with like considerations.

Additional reasons also militate against defendant's argument. The import of allowing defendant to benefit from ECJAC's decision and effect an issue preclusion would, realistically, place that decision "on the same footing as court judgments." *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 281, 100 S.Ct. 2647, 2661, 65 L.Ed.2d 757 (1980). Since action of a *state* administrative agency does not effect an issue preclusion, *id.*, we do not believe that ECJAC's decision erects such a bar here. This is particularly true where neither party agreed to allow the opposing side to bind it to ECJAC's decision. In fact, grievances between *only* plaintiff and defendant would not be brought before the ECJAC. If this were a § 301 action and defendant were a signatory to the collective bargaining agreement, we would have no hesitation in according the ECJAC decision the degree of deference which defendant urges. However, that is not the case and we must deny the motion.

■ Defendant also argues alternatively that if there was a breach of contract between plaintiff and Eastern for which it is responsible, its actions were proper since they were based upon a good faith belief that plaintiff had misdelivered the nitrogen. Since defendant acted only upon completion of an investigation which indicated that plaintiff had, in fact, delivered nitrogen to the argon tank, defendant urges that its actions were in "complete good faith" and motivated by a desire to maintain good customer relations. Hence, defendant argues that summary judgment is appropriate because plaintiff cannot prove that the interference with his contract was "improper . . . under the circumstances." *Adler, Barish, Daniels, Levin and Cresskoff v. Epstein*, 482 Pa. at 426, 393 A.2d 1175. However, we do not believe that defendant's asserted "good faith" may be properly tested on a motion for summary judgment. *Bartholomew v. Fischel*, No. 81–3687 (E.D.Pa. Dec. 21, 1981), slip op. at 6; *Shoemaker v. Allender*, 520 F.Supp. 266, 270 (E.D.Pa.1981). *See Poller v. CBS*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (intent and motive usually cannot be resolved by a Rule 56 motion). This is particularly true where defendant's asserted good faith actions were based on an *ex parte investigation* into the gas misdelivery. Moreover, in an effort to exonerate himself, and to isolate the source of the nitrogen contamination, plaintiff offered to undergo a polygraph examination. Defendant's refusal to accede to plaintiff's offer could be viewed as action inconsistent with its claim of "good faith". This is particularly true since plaintiff appears to argue that defendant's actions were motivated more by a desire to maintain good customer relations *at all costs* than to discover the real source of the nitrogen contamination.

An appropriate order will issue denying defendant's motion.