**MACK TRANSPORTATION COMPANY**

v.

**LOCAL 773, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.**

Civ. A. No. 78–3317.

United States District Court, E. D. Pennsylvania.

Aug. 21, 1979.

Vincent J. Pentima, Philadelphia, Pa., for plaintiff.

Stephen C. Richman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Mack Transportation Company ("Mack") instituted this action pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, Sections 10 and 11 of the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, in order to vacate or modify an award of the Joint Local City Grievance Committee ("JLC") of Allentown, Pennsyl-

vania. The material facts in this case are not in dispute, and Mack, the employer, and defendant Local 773 have moved for summary judgment.

The underlying dispute arose when Mack discharged Bruce Bowman ("Bowman"), a member of defendant union, on June 21, 1977. Bowman worked at Mack's Philadelphia terminal from June 11, 1973 until February, 1976. In February, 1976, following his submission of a successful bid, Bowman was transferred to Mack's Fogelsville operation which was opened to serve a single customer, Cotter & Co. In June, 1977, Mack investigated Bowman's performance after receiving certain complaints from Cotter & Co. As a result of its investigation, Mack discharged Bowman for his alleged falsification of logs, violation of Department of Transportation hours, abuse of time, travel at excessive speeds, unauthorized use of equipment, and delay of equipment. Exhibit B to Complaint. Bowman and the Union grieved the discharge. Because the grievance was not resolved, it was submitted to the JLC pursuant to Article 43, Section 1(f) of the Central Pennsylvania Over-the-Road and Local Cartage Supplemental Agreement ("the Agreement").

The JLC is composed of four persons, two of whom are named by the union and two of whom are named by the Motor Carriers Conference members. Article 43, Section 1(a). The Agreement provides that "a majority decision of the Committee shall be final and binding on all parties." Article 43, Section 1(f). On July 8, 1977 the JLC announced its unanimous decision that "[b]ased on the facts presented, in lieu of discharge [Bowman] be returned to work with a 30 day suspension. To return to work on July 20, 1977." Exhibit C to Complaint. The JLC further listed its award as follows: "30 day suspension and returned to work with all seniority and benefits." *Id.*

Unwilling to reinstate Bowman at Fogelsville,[1] Mack offered to return him to a

---

1. At the time of Bowman's discharge, Mack's Fogelsville employees serviced Cotter & Co. exclusively on a common carrier basis. Hanlon Affidavit ¶ 7. Cotter informed Mack that "it did not want and would not permit Mr. Bowman to haul any of its goods or otherwise perform services for it." *Id.* at ¶ 12. Mack therefore argues that it is necessary that Bow-

position in Philadelphia with full company seniority, benefits, and identical pay. This solution was unacceptable to Bowman, however, so the Union filed suit seeking to enforce the award. *Local 773, International Brotherhood of Teamsters v. Mack Transportation Co.*, C.A. No. 77–3804 (E.D. Pa.) Because we were persuaded by Mack's argument that the award was fatally ambiguous in that it did not specify whether Bowman was to be reinstated at Fogelsville,[2] we remanded the case to the JLC for clarification. *Local 773, International Brotherhood of Teamsters v. Mack Transportation Co.*, C.A. No. 77–3804 (E.D.Pa., April 24, 1978).

On July 6, 1978, the JLC issued its clarification:

Bruce Bowman be reinstated by Mack Transportation Co. in seniority order at Fogelsville today (July 6, 1978). Based on the facts presented Bruce Bowman is to receive all back fringe benefits from July 20, 1977 and all money due him that was earned by the next man junior to him minus unemployment and any money he earned from other employers.

Exhibit D to Complaint. Mack thereafter filed this action seeking to vacate or modify the JLC's second unanimous award.[3]

The scope of review of a labor arbitration award is narrow.[4] We must determine if the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). We must find that it does "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). As the Supreme Court has noted: "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United*

---

man not be assigned to Fogelsville, where the only customer served is Cotter. Cotter, of course, is not a party to this lawsuit or to the collective bargaining agreement between Mack and the Union. In September, 1977, Mack and Cotter entered into a lease arrangement under the terms of which Mack supplies drivers to Cotter. *Id.* at ¶ 18. Neither Cotter's obligation, if any, to accept Bowman as a driver, nor Mack's possible remedies under the collective bargaining agreement if Cotter refuses to accept Bowman, is now before us. In fact, at this time it is speculation to assume that Cotter will refuse to accept Bowman if the JLC's award is judicially enforced.

2. In its memorandum in support of its motion for summary judgment in the earlier action, Mack contended: "The 'Award' is defective in that, it fails to specify, *inter alia*, . . . (e) how, where and to what position Mr. Bowman should be returned . . . ." Defendant's Memorandum in Support of Motion for Summary Judgment at 13. *Local 773, International Brotherhood of Teamsters v. Mack Transportation Co.*, C.A. No. 77–3804 (E.D.Pa.).

3. Mack attacks the JLC award on the following grounds:

(1) The JLC exceeded the scope of its power and authority under the collective bargaining agreement;

(2) The Report does not draw its essence from the collective bargaining agreement;

(3) The JLC manifestly and arbitrarily disregarded the collective bargaining agreement, as well as established principles of labor and industrial common law;

(4) The Report of July 6, 1978 is arbitrary, capricious and without rationale [sic] basis;

(5) The JLC so imperfectly executed its powers that a final and definite Report upon the subject matter was not made;

(6) The Report of July 6, 1978 is so egregiously in error that it must be set aside, vacated and declared to be null and void and of no legal effect.

Plaintiff's Motion for Summary Judgment at 2–3.

4. The scope of review is not altered by the fact that we are reviewing the award of a joint committee rather than that of a single arbitrator. *General Drivers, Warehousemen & Helpers Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). The Agreement in this case establishes that a majority decision of the JLC is final and binding. Article 43, Section 1(f).

*Steelworkers of America v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 599, 80 S.Ct. at 1362.

■ Mack's most fundamental attack upon the JLC's award is that the JLC exceeded its authority in reducing Bowman's discharge to a suspension.[5] Because the JLC awarded Bowman a suspension, Mack argues, it follows that the JLC agreed that he was guilty of misconduct. Since the JLC agreed that Bowman engaged in some misconduct, Mack argues, it lacked authority to alter the discipline imposed. In support of its position, Mack refers us to a number of cases in which an arbitrator's reduction of a discharge to a suspension was overturned. *See, e. g., Truck Drivers & Helpers Local 784 v. Ulry-Talbert Co.,* 330 F.2d 562 (8th Cir. 1964); *Textile Workers Local 1386 v. American Thread Co.,* 291 F.2d 894 (4th Cir. 1961). Those cases are only useful precedent, however, to the extent that the arbitrators' powers as defined by the contracts in those cases are similar to the powers of the JLC in this case. Our examination of those contracts convinces us that they are,

in fact, quite different from the Agreement in this case. For example, in *Truck Drivers & Helpers Local 784 v. Ulry-Talbert Co., supra,* the collective bargaining agreement specifically provided that in any arbitration arising from a discharge, the arbitration board could reverse the action taken by management only "if it finds that the Company's complaint against the employee is not supported by the facts, and that the management has acted arbitrarily and in bad faith or in violation of the express terms of this Agreement." 330 F.2d at 564. Similarly, in *Textile Workers Local 1386 v. American Thread Co., supra,* the company specifically reserved to itself certain "Management Rights." The decision of the Fourth Circuit in that case must therefore be understood in terms of those express reservations: "If the express limitation contained in Article III (that the employer's exercise of his reserved right to discipline might be made the subject of a grievance and of collective bargaining, *but not of arbitration*) means anything, it means that

5. Article 44 of the Agreement, which regulates discharges and suspensions, provides:

The Employer shall not discharge nor suspend any employee without just cause but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union affected, except that no warning notice need be given to any employee before he is discharged if the cause of such discharge is dishonesty, proven theft, drunkenness, drinking alcoholic beverages, or while under the influence of alcoholic beverages, or narcotics, the use of narcotics (as described in the Federal Pure Food and Drug Act), barbiturates, or amphetamines, or the possession of narcotics named above during a tour of duty, refusal to submit to a Sober-Meter, other sobriety or blood alcohol test, recklessness resulting in a serious accident while on duty, failure to report an accident, unprovoked assault on an Employer or management supervisor, carrying of unauthorized passengers or willful abuse of Company equipment. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from the date of said warning notice. Discharge or suspension must be .by proper written notice to the employee and the Local Union at the time discharge or suspension is imposed. Any employee dis-

charged away from his home terminal shall be provided the fastest available transportation to his home terminal at the Employer's expense. Any employee may request an investigation as to his discharge or suspension. Should such investigation prove that an injustice has been done an employee, he shall be reinstated. The Joint Local City Grievance Committee and the Joint Area Grievance Committee shall have the authority to order full, partial or no compensation for time lost. Appeal from discharge, suspension, or warning notice must be taken within three (3) days by written notice, and a decision reached within seven (7) days from the date of discharge, suspension or warning notice. If the employee involved is not within the home terminal area when the action of discharge, suspension or warning notice is taken the three (3) day period will start from the date of his return to his home terminal. If no decision has been rendered on the appeal within seven (7) days, the case shall then be taken up as provided for in Article 43, Section 1 of this Agreement.
Uniform rules and regulations with respect to disciplinary action may be drafted but must be approved by the Joint Area Grievance Committee. Such approved uniform rules and regulations shall prevail in the application and interpretation of this Article.

the employer's established disciplinary practices were not to be upset by an arbitrator on the ground of inappropriateness." 291 F.2d at 900 (emphasis in original). The Agreement in this case, however, permits any employee to "request an investigation as to his discharge or suspension. Should such investigation prove that an injustice has been done an employee, he shall be reinstated. The Joint Local City Grievance Committee and the Joint Area Grievance Committee shall have the authority to order full, partial or no compensation for lost time." Article 44. The JLC's charge to determine whether "an injustice has been done an employee" is considerably more far-reaching than an inquiry into whether the charge against the employee is supported by the facts. It is certainly not an unheard of practice for an arbitrator to reduce the severity of a discipline which he finds to be unduly harsh. *See, e. g., United Steelworkers of America v. Enterprise Wheel & Car Corp., supra; District 50, UMW v. Bowman Transportation, Inc.,* 421 F.2d 934 (5th Cir. 1970). We believe that the union's view that the JLC can review the severity of discipline for its "justness" can therefore rationally be derived from the Agreement in this case.

▪ Even if the Agreement could not be read to grant the JLC such expansive powers, we believe that the award in this case would have to be upheld nonetheless. The JLC's award in this case is not accompanied by a written explanation of its reasoning or a listing of its findings.[6] It is therefore impossible to ascertain with precision what the JLC's findings in support of its award were. We believe, however, that the admonition to sustain an award "if the interpretation can in any rational way be derived from the agreement," *Ludwig Honold Mfg. Co. v. Fletcher, supra,* 405 F.2d at 1128, requires that we approach the JLC's findings in an equally deferential manner.

If the JLC's findings, even under Mack's restrictive view of the contract, could support its award, the award should be upheld. As we discussed above, Bowman was accused of misconduct including falsification of logs, abuse of time, unauthorized use of equipment, and traveling at excessive speeds. Some of the types of misconduct with which Bowman was charged permit the employer to suspend or discharge the employee without any advance warnings. Agreement, Article 44. That is not true, however, of all the misconduct with which Bowman was charged. For example, if Bowman's only misconduct had been traveling at excessive speeds, Mack would not have been entitled to discharge him without giving him at least one warning notice. *Id.* It is entirely possible that the JLC was convinced that Bowman was guilty of traveling at excessive speeds, while at the same time it may have concluded that he had not committed the other offenses. Under those circumstances, the JLC would have been justified in concluding that Bowman's discharge violated the Agreement and that he should be reinstated. Although this scenario is, at best, conjectural, we believe that it is a rational interpretation supporting the JLC's award and that the policy of federal labor law favoring the settlement of disputes by arbitration requires that we enforce an award where such a rational interpretation is possible.

▪ We have considered plaintiff's other attacks upon the JLC's award, *see* note 3 *supra,* and we find them to be without merit. We note that although Mack now challenges the JLC's authority to determine whether Bowman was to be reinstated in Philadelphia or Fogelsville, Mack itself previously contended that the JLC's original award was defective in that it failed to specify where he should be returned to work. *See* note 2 *supra.* Moreover, our Order of April 24, 1978 clearly requested

---

6. There is, of course, no requirement that the arbitrator give reasons for an award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358 (1960). In a case such as this, however, in which counsel have represented to the court that no record was made of the proceedings before the JLC, a more detailed report would assist a court required to review the award and would undoubtedly enhance the respect of the contracting parties for the dispute resolution mechanism.

the JLC to resolve this issue. The JLC's resolution of this issue is therefore not grounds for refusing to enforce the award.

■ We also reject Mack's contention that the JLC erred in refusing to consider the earnings Bowman would have earned had he accepted Mack's offer of employment in Philadelphia. The JLC's award does deduct from Bowman's back pay amounts that he has earned from other employers. The issue of employment in Philadelphia, however, was one of the very items contested by the parties on which the JLC was eventually required to rule. Because the JLC specifically decided that Bowman was to be reinstated in Fogelsville, we do not believe that Bowman's refusal to accept the offer of reinstatement in Philadelphia by itself requires that his back pay award be reduced. We note that this is not a case in which Bowman's former position in Fogelsville ceased to exist. Rather, Mack's reluctance to reinstate Bowman in Fogelsville was based on its own dealings with its customer, Cotter & Co., who is neither a party to the Agreement between Mack and Local 773 nor a party to this lawsuit. Although we do not minimize the practical import of these considerations, they do not rise to such a level that it can be said that Bowman's former position no longer exists.

■ We shall therefore grant defendant's motion for summary judgment and enforce the award of the JLC that Bowman be reinstated at Fogelsville and be awarded back pay and fringe benefits. Although we enforce the JLC's award, it is necessary to remand to the JLC for a determination of the exact amount due Bowman. *See United ed Steelworkers of America v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 599, 80 S.Ct. 1358. The formula devised by the JLC deducts from Bowman's award the amounts derived from unemployment compensation and other employment. The JLC must now determine what those amounts are.[7] Furthermore, the JLC should determine whether Bowman failed to attempt to mitigate his losses, requiring that his award be reduced further.[8] *See Industrial Union of Marine & Shipbuilding Workers v. American Dredging Co.,* 202 F.Supp. 940, 945 (E.D.Pa.1962).

■ In the absence of any specific statutory authorization for the award of attorneys' fees in cases of this type, and because we find that plaintiff's attempt to vacate or modify the JLC's award was not brought in bad faith, the union's request for attorneys' fees will be denied. *General Telephone Co. v. IBEW Local 89,* 554 F.2d 985 (9th Cir. 1977); *Machinists & Aerospace Workers Lodge 335 v. Chicago Pneumatic Co.,* 452 F.Supp. 592 (W.D.Pa.1978).

---

7. On remand, the JLC must also specify the back fringe benefits to which Bowman is entitled.

8. In general, a back pay award is computed by subtracting actual interim earnings from what the employee would have earned had he not been discharged. A discharged employee, however, must make reasonable efforts to obtain other employment to mitigate his losses. *Cf. Oil, Chemical & Atomic Workers International Union v. N. L. R. B.,* 178 U.S.App.D.C. 301, 547 F.2d 598 (D.C.Cir. 1976), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). This duty may include, in certain circumstances, the obligation to accept an offer of reinstatement. We have already determined that Bowman was not required on the facts of this case to accept Mack's offer of reinstatement in Philadelphia. On remand, however, the JLC should determine whether Bowman made reasonable efforts to obtain other suitable employment during periods in which he was unemployed. If he did not, his award should be reduced accordingly.