**INTERNATIONAL LADIES' GARMENT WORKERS' UNION, LOCAL NO. 111**

v.

**DeeVILLE BLOUSE CO., INC.**

Civ. A. No. 79–705.

United States District Court,
E. D. Pennsylvania.

March 17, 1980.

Charles W. Johnston, Jr., Harrisburg, Pa., for plaintiff.

Roland Morris, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Threatening to strike, plaintiff union sent defendant a letter in May 1975 and demanded access to company payroll books and other records according to provisions of a collective bargaining agreement into which the parties had entered.[1] When defendant refused to permit plaintiff to inspect all records which it desired, plaintiff submitted the dispute to an arbitrator,[2] who determined that defendant had violated the terms and conditions of the collective bargaining agreement. Having filed this action under the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the arbitrator's decision, plaintiff now moves for summary judgment, which will be granted.

The scope of judicial review of an arbitrator's decision is "narrow in the extreme", *Amalgamated Meat Cutters and Butcher Workers of North America, Local 195 v. Cross Butchers Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir. 1975),[3] for federal labor policy favors arbitration as the means selected by the parties for the final adjustment of their differences. *United Mine Workers of America, District No. 2 v. Barnes & Tucker Co.,* 561 F.2d 1093 (3d Cir. 1977).[4] Refusal to review the merits of an arbitration award is

1. During the period relevant to this suit plaintiff and defendant were parties to two successive collective bargaining agreements. The first covered the period from June 1, 1973, to May 31, 1976; the second, from June 1, 1976, to May 1, 1979. Those articles of agreement germane to this dispute did not change.

2. Article XXIX of the collective bargaining agreement provides that any disputes, grievances or controversies between the parties may be submitted to arbitration. Specifically, the agreement states that if the parties

> fail satisfactorily to dispose of any such dispute, complaint, controversy, claim or grievance, or if for any reason it has not been taken up by them, or if the matter does not lend itself to the foregoing procedure, the matter shall be submitted to arbitration before an arbitrator agreed on by the parties.

Article XXIX, § 1(b). This language clearly indicates that the parties may resort to arbitration before exhausting other avenues of redress. Accordingly, plaintiff's supposed failure to settle the matter through the preliminary steps of the adjustment machinery does not affect the propriety of this suit or of the arbitrator's award.

However, this language does *not* excuse defendant from the terms of Article XXIX, § 2, which provides, in pertinent part, that

> the procedure herein established for the adjustment of disputes shall be the *exclusive* means for the determination of *all* disputes . . . Neither party shall institute any action in a court of law or equity, state or federal, . . . other than to compel arbitration, as provided in this agreement, or with respect to the award of an arbitrator.

3. *See also Hines v. Anchor Freight Motor Co.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), *Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d 211 (3d Cir. 1979), *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783 (3d Cir. 1978), *NF&M Corp. v. United Steelworkers of America,* 524 F.2d 756 (3d Cir. 1975).

4. *See also Gateway Coal Co. v. United Auto Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), and 29 U.S.C. § 173(d) ("[f]inal

the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. * * *

[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. *It is the arbitrator's construction which was bargained for;* and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596–599, 80 S.Ct. 1358, 1360–1362, 4 L.Ed.2d 1424 (1960) (emphasis added). Review of arbitration awards is circumscribed further by the following test:

· [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet *his award is legitimate only so long as it draws its essence from the collective bargaining agreement.* When an arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.* at 597, 80 S.Ct. at 1361 (emphasis added). A labor arbitrator's award "draws its essence from the collective bargaining agreement" when

the interpretation can *in any rational way* be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising

*Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969) (emphasis added).

In the case at bar the arbitrator interpreted Article XXII of the parties' collective bargaining agreement. This article, captioned "Access to Shop—Examination of Books—Payroll Records", included these provisions:

1. Representatives and employees of the Union, including engineers and accountants, shall have access to the shop of the Employer during working hours to take up complaints or to determine compliance with the terms of this agreement.

2. The Employer shall, upon request, submit to such representatives and employees of the Union the payroll books and records and all other pertinent books and records for examination for the purpose of determining compliance with the terms of this agreement, and the data including time study records employed in setting wages and piece rates.

3. The failure of the Employer to permit access to the shop or to submit such books, records or data shall be presumptive evidence of the violation complained of and shall justify sustaining the Union's complaint. Moreover, in the event of such failure by the Employer, the Union at its option may consider that the Employer has forfeited its rights under the agreement.

4. The Employer shall send to the Union office monthly a copy of its payroll for the last work week of the preceding month, which shall include for each employee his name, date of employment, craft, operation and section, straight-time hours and wages and overtime hours and wages.

Plaintiff contends that Section 2 of Article XXII creates an absolute right of access to defendant's books and records "for the purpose of determining compliance with the terms of [the] agreement" between the parties. Defendant maintains that Section 2,

over the application or interpretation of an existing collective bargaining agreement").

read as a part of the entire agreement, limits plaintiff's right of access to only certain specific books and records and only under certain circumstances. Specifically, defendant asserts that plaintiff can obtain only payroll books and records. The language "and all other pertinent books and records", argues defendant, merely describes records which pertain to payroll. Furthermore, the right of access must be pertinent to "the violation complained of". Under defendant's theory, plaintiff would have to be certain, in advance of the requested access, of its basis for claiming a violation of the agreement by defendant.

Careful examination of the language of Article XXII refutes defendant's contentions. In Section 1 plaintiff receives a right of access to the shop not only to take up actual disputes but also to see if defendant has been complying with the terms of their agreement. Access is not conditioned on the existence of a complaint, for the section provides that union representatives may enter the shop "to take up complaints" *or* "to determine compliance".

Similarly, in Section 2 defendant agrees, upon request of plaintiff, to submit to union representatives or employees its "payroll books and records and all other pertinent books and records for examination for the purposes of determining compliance with the terms of the agreement". This last phrase, "for the purpose . . .", is identical to the language of Section 1, where the parties acknowledge a distinction between access to the shop for complaints and compliance. The arbitrator reasonably assumed that the parties were cognizant of this distinction in drafting Section 2. By expressly including compliance, instead of limiting the language to complaints, the parties clearly expressed the intent that submission of the books was not conditioned upon the existence of a complaint. Section 2 affords plaintiff, acting in good faith, of course, access to defendant's payroll books and records and all other pertinent books and records without any limiting preconditions.

Section 3 creates certain presumptions and rights in the event of a violation of the previous two sections. Defendant points to the terms of this section as authority for the proposition that the parties contemplated production of other pertinent books and records only if plaintiff alleges a particular violation of the agreement. In particular, defendant points to the language of Section 3, which states that "the failure of the Employer to submit such books, records or data shall be presumptive evidence of the violation complained of and shall justify sustaining the Union's complaint." Defendant stresses the language "of the violation complained of" and argues that this phrase shows the parties' intention to condition access to books and records upon a specific violation of which plaintiff would complain. However, neither Section 2 nor 3 supports this view. The presumption articulated in Section 3 not only applies to submission of books, records and data but also to access to defendant's shop. Once again, the pertinent language is couched in the disjunctive. The presumption created by Section 3 clearly applies to both access to the shop, a right created by Section 1, and submission of books and records, a right created by Section 2. Therefore, if a complaint is pending and the union, to investigate the complaint, attempts to gain, and defendant denies, access to the shop or to books and records, Section 3 creates a presumption that defendant committed the alleged violation. Keeping in mind, as defendant argues, that access to books and records depends upon the existence of a complaint, it would necessarily follow that access to defendant's shop also depends upon such a complaint. Regrettably for defendant, this interpretation squarely contradicts the express language of the collective bargaining agreement.

 The arbitrator also rejected defendant's interpretation of Article XXII. He concluded that

> [t]he entire wording of [these] provisions, as agreed to and signed by [defendant], makes it a kind of "discovery provision under which [defendant] has agreed, in advance, to make available its "payroll

books and records and all other pertinent books and records for examination for the purpose of determining compliance with the terms of this Agreement . . ." This is a provision which has been used as a "discovery" procedure throughout all of the Agreements with which the Arbitrator has been acquainted in the several branches of the Women's Apparel Industry in Eastern Pennsylvania and Southern New Jersey, whether they be jobbers, jobbers-contractors, contractors, or subcontractors.

Past Union access to the books and pertinent records of other Women's Apparel companies with which the present Arbitrator has been involved for some 20 years have uncovered instances in which employers have been subcontracting work to non-contributing contractors, have been subcontracting work to non-Union contractors . . . It is for these sorts of things that Article XXII exists in the Agreements, and the parties to such Agreements have mutually recognized that, for their respective goods, such arrangements should exist in all Agreements covering the various branches of the Women's Apparel Industry.

The arbitrator, having considered industry-wide practice, also observed that "[o]n a number of occasions under the 1973 and preceding Agreements the Union was able to make complete audits of the Company's books". Prior industry practice as well as shop practice constitute a legitimate "source of law" from which the arbitrator may draw, for both comprise an implicit part of the collective bargaining agreement. Moreover,

[t]he labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the

shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1353 (1960). Accordingly, the arbitrator did not manifestly disregard the express terms of Article XXII.[5] His interpretation emanated from the express terms of the collective bargaining agreement; he construed the entire article, not just isolated phrases within Section 2; and he reached a result consistent with the language of other sections in Article XXII. In sum, the arbitrator's decision interpreting Article XXII can be derived rationally from the collective bargaining agreement.

Defendant's attacks upon the arbitrator's decision cannot withstand scrutiny. First, defendant argues that the arbitrator exceeded the narrow question presented to him by allowing plaintiff to broaden its request. Originally, plaintiff requested the arbitrator to resolve the question of wheth-

5. *Cf. Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (an arbitrator's award may be vacated if it is in "manifest disregard of the law"), *Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1955) (whether the arbitrator misconstrued the contract is not open to judicial review), *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854) ("[a]rbitrators are judges chosen by the parties to decide the matters submitted to them . . . as a mode of settling disputes. It should receive encouragement . . . as the award as with the submission contains the honest decision of the arbitrators . . . [A] court will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the [Court] in place of the [arbitrator], and would make an award the commencement, not the end, of litigation").

er defendant had violated its contractual obligations under Article XXII by "fail[ing] to make available its payroll books and records to the auditors of the Union". At the first session of the arbitration hearing the Union supposedly changed the question unilaterally and contended that Article XXII conferred an absolute right of access to *all* company books and records. When the arbitrator answered this enlarged question, defendant contends, he failed to confine his decision to the terms of the submission.

■ True, an arbitrator must limit his decision to the terms of the submission, *Textile Workers Union of America, Local Union No. 1386 v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961), and failure to do so may vitiate the award. *Continental Materials Corp. v. Gaddis Mining Co.*, 306 F.2d 952 (10th Cir. 1962).[6] But in the instant matter the parties requested the arbitrator to interpret the meaning of specific language in Article XXII. In order to do so, the arbitrator necessarily had to define exactly what the provision meant. That plaintiff arguably expanded its contention did not broaden the submission to or function of the arbitrator, whose assignment remained the interpretation of the collective bargaining agreement. Defendant further complains that allowing plaintiff to present this augmented argument to the arbitrator denied it due process of law because defendant had prepared its case upon the basis of the submission as stated. However, as just noted, the submission to the arbitrator required him to define the *entire*

phrase. And the submission to the arbitrator remained constant; only plaintiff's contentions became arguably broader. Finally, plaintiff's "enlargement" occurred at the first hearing. Two hearings followed during which defendant had an opportunity to contest plaintiff's assertions.

■ Defendant also urges that the arbitrator's decision violates the "plain and unambiguous" language of the collective bargaining agreement. In particular, defendant accuses the arbitrator of misconstruing the phrase "payroll books and records and all other pertinent books and records". Defendant invokes several rules of construction to clarify this "unambiguous" language and to support its interpretation of Article XXII. First, defendant cites the rule of *ejusdem generis*, which requires construing general words following particular words as including only those objects of the same kind or class as ones specifically mentioned. *See Cutler v. Kouns*, 110 U.S. 720, 4 S.Ct. 274, 28 L.Ed. 305 (1884). Applying this principle to the disputed language in this case, says defendant, requires that the words "and all other pertinent books and records" be construed to include only "payroll books and records", the words which immediately precede the general language in Section 2. However, the rule of *ejusdem generis*, which helps to clarify the meaning of words in some circumstances, cannot be used to thwart the clear intent and purpose of the parties' agreement, *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)[7], or to render general words

6. *Cf. Textile Workers Union of America Local Union No. 1386 v. American Thread Co., supra*, ("an arbitration award is unenforceable if it exceeds the scope of the submission, although where it is not 'apparent that [the arbitrator] went beyond the submission', courts should enforce the promise to arbitrate").

7. In *Powell* defendant contended that the specific language of 18 U.S.C. § 1715—"pistols, revolvers, and other firearms capable of being concealed on the person"—limited the more general language so that the phrase "other firearms capable of being concealed on the person" would be limited to concealable weapons such as pistols and revolvers. The Supreme Court squarely rejected this contention. 423

U.S. at 90, 96 S.Ct. at 318. *Cf. United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964) (language of the Federal Food Drug and Cosmetic Act provision, 21 U.S.C. § 331(k), "the doing of any other act" is not restricted to specifically enumerated acts such as "alteration, mutilation, destruction, obliteration and removal" and could include "holding" of food as well); *Cleveland v. United States*, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946) (language of the Mann Act, 18 U.S.C. § 2421, proscribing transportation in interstate commerce of "any woman or girl for the purpose of prostitution or debauchery *or for any other immoral purpose*" includes the practice of polygamy); *United States v. Mescall*, 215 U.S. 26, 31, 30 S.Ct. 19, 54 L.Ed. 77

meaningless. *United States v. Alpers*, 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457 (1950). Defendant's application of this rule would effectively expunge the general words from the agreement.[8]

Defendant further relies upon the canon of construction which suggests that, where possible, all words in the contract should be given effect, *J. E. Faltin Motor Transportation, Inc. v. Eazor Express, Inc.*, 273 F.2d 444 (3d Cir. 1959), and argues therefrom that since the general words, if given their natural meaning, would subsume the specific words, the specific words would be mere surplusage. That is, if the specific words are considered jetsam, the principle is violated, for all the words have not then been given effect. However, defendant's argument presupposes that the general words subsume the specific ones. Contrary views are equally tenable. The parties could have intended the general words to be operative and the specific ones to be exemplary. This view certainly complies more faithfully with this canon of construction than defendant's.

In any event, defendant bargained for the language, however "unambiguous", of this collective bargaining agreement. If defendant intended only to sacrifice part of its privacy regarding these records, it could have done so more explicitly. In addition, defendant also bargained for submission of disputes and resolution thereof by the arbitrator. In other words, defendant bargained for the arbitrator's decision, which has been drawn from the "essence" of the agreement. To disallow the arbitrator's award because defendant dislikes the arbitrator's interpretation of words defendant used would permit defendant to rewrite the collective bargaining agreement.[9]

▮▮▮ Only one other issue remains for consideration. When defendant filed an answer to plaintiff's complaint, it included against plaintiff a counterclaim seeking restitution of monies allegedly due defendant from plaintiff. The arbitrator held that defendant's

> attempted counterclaim to the Union's claims and contentions lacks status under Article XXII of the 1973 and 1976 Agreements and, therefore, no finding thereon can be made by the Arbitrator under the authority vested in him under Article XXII of the 1973 and 1976 Agreements.

That the arbitrator considered the counterclaim procedurally defective readily appears from his Opinion and Decision, which stated, in pertinent part, that

> [t]he Arbitrator is not here determining anything as respects this "counter claim" of the Employer. There is nothing in the 1973 or 1976 Agreements which permits this Employer to attach a counter claim to a Union claim that has been processed through the terms of Article XXIX of the Agreement. The issue decided here is that which has been filed by the Union against the Company. There is nothing here in the way of a Company allegation that the Union is in violation of any

---

(1909) (*ejusdem generis* is "not a cast-iron rule").

8. Cf. *Russell Motor Car Co. v. United States*, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778 (1923) (refusing to apply rule of *noscitur a sociis* where doing so would create, not remove, doubt and would modify the obligations of an existing private contract).

9. Defendant also suggests that this Court ignore the mandate of *Ludwig Honold Manufacturing Co. v. Fletcher, supra*, because allegiance thereto would deprive defendants of due process of law. Application of the *Ludwig Honold* test, urges defendant, precludes meaningful judicial review by permitting the arbitrator "to run roughshod" over the terms of the collective bargaining agreement and by reducing

judicial review to "rubber-stamping". Given the unanimity of acceptance of the *Ludwig Honold* standard, *Mack Transportation Co. v. Local 173, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 476 F.Supp. 165 (E.D.Pa.1979), *Warehouse Employees, Local 169 v. Acme Markets, Inc.*, 473 F.Supp. 709 (E.D.Pa.1979), *General Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union 249 v. Consolidated Freightways*, 464 F.Supp. 346 (W.D.Pa. 1979), *United Steelworkers of America v. Interspace Corp.*, 447 F.Supp. 387 (W.D.Pa.1978), *Amerada Heat Corp. v. Local 2026, Federal Labor Union*, 385 F.Supp. 279 (D.N.J.1974), we feel obliged to abide thereby until instructed by the Circuit Court to the contrary.

particular provision of the Agreement, and there has been no showing that any such alleged violation has been filed by the Company against the Union so as to constitute a "dispute, complaint, controversy, claim or grievance", within the meaning of Article XXIX, that has been considered by the parties through the steps of the "Adjustment Machinery" as therein set forth. Therefore, nothing present here constitutes an issue that is properly before the Arbitrator for a "final and binding" decision under Article XXIX, Section 1(b). Consequently, the Arbitrator must find that the Company's attempted counterclaim to the Union's claims in this case lacks status under Article XXIX, Section 1(b), and is not here subject to any finding by the Arbitrator.

Granted, sound labor policy favors expeditious resolution of disputes, *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Scofield*, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), but this policy does not grant courts license to interfere with admittedly fair and available procedures which the parties have agreed to follow. Undoubtedly, procedural questions "which grow out of the dispute and bear on its final disposition should be left to the arbitrator". *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1963). The reasons for this policy are no mystery;

> [r]eservation of "procedural" issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.
>
> In addition, the opportunities for deliberate delay and the possibility of well-intentioned but no less serious delay created by separation of the "procedural" and "substantive" elements of a dispute are clear. * * * [S]uch delay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the

disadvantage of the parties (who, in addition, will have to bear increased costs) and contrary to the aims of national labor policy.

*Id.* at 558, 84 S.Ct. at 919. Because the arbitrator did not reach the merits of defendant's counterclaim defendant could have filed its own claim with the arbitrator. Article XXIX, which governs, contains no time limitations.[10]

Moreover, Section 2 of Article XXIX specifically states that the parties

> *intended and agreed that the procedure herein established for the adjustment of disputes shall be the exclusive means for the determination of all disputes, complaints, controversies, claims or grievances whatsoever*, including the arbitrability of any dispute, and including claims based upon any breach of the no-strike, no-stoppage pledges of this agreement or upon any other breach of this agreement. It is intended that this provision shall be interpreted as broadly and inclusively as possible. Neither party shall institute any action or proceeding in a court of law or equity, state or federal, or before an administrative tribunal, other than to compel arbitration, as provided in this agreement, or with respect to the award of an arbitrator. This provision shall be a complete defense to and also ground for a stay of any action or proceeding instituted contrary to this agreement. (emphasis added.)

Plaintiff complied with the directives of not only Article XXIX but also Article XXII. To require defendant to do likewise would not be unfair. Accordingly, plaintiff's motion for summary judgment will be granted.

---

10. *Cf. Local 616, International Union of Electrical Workers v. Byrd Plastics, Inc.*, 428 F.2d 23, 26 (3d Cir. 1970) ("[t]he question of interpretation of procedural requirements for filing a grievance is within the jurisdiction of the arbitrator . . . courts have no business overruling him because their interpretation of the contract is different from his").