**INTERNATIONAL UNION OF OPER-ATING ENGINEERS, LOCAL 150, AFL–CIO, Plaintiff-Appellee,**

v.

**G. BLIUDZIUS CONTRACTORS, INC., Defendant-Appellant.**

No. 83–2262.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1984.

Decided March 26, 1984.

---

**6.** Plaintiffs' additional contentions have been seriously considered and are rejected as without merit.

Roger N. Gold, Baum, Sigman & Goldt, Chicago, Ill., Anita Tanay, Gold & Polansky, Chicago, Ill., for plaintiff-appellee.

James E. O'Halloran, Jr., O'Halloran, Lively & Walker, Northbrook, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, and WOOD, and FLAUM, Circuit Judges.

PER CURIAM.

Plaintiff-appellee, International Union of Operating Engineers, Local 150, AFL–CIO ("Union"), filed the instant action pursuant to Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), to compel the defendant-appellant, G. Bliudzius Contractors, Inc. ("Company"), to arbitrate a dispute between the Union and Bliudzius pursuant to the collective bargaining agreement between the Union and the Mid-America Regional Bargaining Association ("MARBA"). Bliudzius was a member of MARBA, but contends that it was not bound by the collective bargaining agreement. The district court granted a motion for summary judgment in favor of the Union and ordered the Company to arbitrate

the dispute. It is from this order that the Company appeals.

### I.

Defendant Bliudzius filed an application to become a member of the Builders' Association of Chicago ("BAC") on January 9, 1981. BAC is an employer association whose members are all in the construction business. BAC, in turn, is a member of MARBA, a group formed for the purpose of negotiating collective bargaining agreements between its members, various employer associations, and trade unions in the construction field, including the plaintiff Union.

The application form, completed and signed by George Bliudzius, President of the Company, contained the following language:

> Our firm directly employs members of the following trade unions:
>
> *Laborers,*
>
> *Carpenters [union names filled in by Company]*
>
> The undersigned herewith makes application for membership to the Builders' Association of Chicago and agrees to be governed by and abides by the provisions of the Constitution and By-Laws of the Builders' Association of Chicago as they now are and as they may be amended from time to time.* [1]

1. Although the Company did not receive a copy of the By-Laws at the time, the relevant section of the By-Laws refers to the designation by members of their collective bargaining rights:

   Article VI ...

   Section 5. Each member shall, as a condition of membership in the Association, and while a member thereof be deemed to have designated the Association as the exclusive collective bargaining representative for the purpose of negotiating collective bargaining agreements covering wages and other terms and conditions of employment with all building trade unions in the Chicago area, such designation shall remain in full force and effect until withdrawn by termination of membership in the Association. Further, such designation shall be understood to authorize the Association to conduct negotiations in concert with other parties mutually interested in collective bargaining on behalf of the construction industry, when determined by the Board to be in the interest of Association members, such designation shall be understood, further, to authorize the Association to assign its members' collective bargaining rights and authority, either temporarily or permanently, to any organization, association or group actively and effectively participating in collective bargaining on behalf of the construction industry in the Chicago Metropolitan area.

   Section 6. Each member of the Association does, by joining or maintaining membership in the Association:

   a. Appoint, designate and authorize the Association to act as its exclusive bargaining agent, with respect to wages, hours, fringe benefits and other conditions of employment, with the construction trade unions the members of which such member employs.

The asterisk directs the reader to language on the bottom of the page which reads as follows:

> \* including the Assignment of Bargaining Rights Statement printing on the reverse side of this Application for Membership.

The statement on the reverse side of the application further reads:

> WHEREAS, by virtue of membership in good standing in the Builders' Association of Chicago (a not-for-profit corporation) this company/corporation, has with all other members of the Association, delegated and assigned to the Association certain of its rights to bargain collectively with labor organizations in the construction trades....

The Company president signed the application and, thereafter, the Company was accepted for membership on February 19, 1981. The Company was listed as a member in the Association's Membership Directory.

In April 1981, the Union filed a grievance with the Company claiming that the Company did not hire a Union member to operate an elevator in a construction area. The Union contract with MARBA required that the Company hire a Union member. The Union and the Company attempted to resolve the dispute. When this effort failed, the grievance was presented to the Joint Grievance Committee. After a hearing, the Joint Grievance Committee could not resolve the issue by majority vote. The Union requested that the matter be submitted to arbitration.

The Company refused to proceed to arbitration, claiming that it had no labor agreement with the Union. Prior to informing the Union of this refusal, the Company also resigned from membership in BAC, citing the labor dispute with the Union and its inability to comply with the contract as the reasons for the resignation.

The Union brought suit to compel arbitration. The district court granted the Union's request to compel arbitration. The Company appeals the judgment entered against it.

## II.

The sole issue presented to this Court is whether the Company is bound by the collective bargaining agreement between MARBA and the Union by virtue of its membership in BAC. The district court held that the Company was bound.[2]

The defendant maintains that it never entered into a collective bargaining agreement with the Union. The Company argues that by signing the application it was not bound by the collective bargaining agreement between the Union and MARBA. The language of the application, according to the Company, contemplates that a member assigns its rights to bargain only with unions with which it already has collective bargaining agreements and not the right to bargain with any other union. In addition, the Company asserts that there was no "meeting of the minds" and, therefore, no contract, because the Company never intended to be bound. Each of these arguments must fail.

The Company president signed the application to BAC that clearly stated on both the front and reverse sides that the Company was delegating its collective bargaining rights to BAC, and that the Company agreed to be bound by the By-Laws.[3] The By-Laws make clear in Article VI, Section 5 (n. 1 *supra*), that BAC is the Company's exclusive bargaining agent.

The Company argues that the application form, by requesting the names of unions

---

**2.** The district court granted plaintiff's motion for summary judgment "for the reasons set forth in plaintiff's memoranda." We will review the order with reference to those memoranda.

**3.** The fact that no Company official read the By-Laws prior to the dispute arising is irrele-

vant. While it may have been more desirable if BAC had provided the By-Laws to the Company and had informed the Company in a more generous manner as to the exact obligations it was assuming, the Company agreed to be bound by the By-Laws and the officers had a responsibility to read the By-Laws.

the members of which it employs, and when read in conjunction with the assignment of bargaining rights clause, contemplates that a member in BAC is assigning away only the rights to bargain with the named unions and not the right to bargain with any different union. Article VI, Section 6, of the By-Laws (n. 1 *supra*) appears to support this possible interpretation where it states that each member does ...

> [a]ppoint, designate and authorize the Association to act as its exclusive bargaining agent, ... with the construction trade unions the members of which such member employs.

The Company asserts that it does not, nor has it ever, employed any members of the Union. The preceding section of Article VI, Section 5 (also n. 1 *supra*), however, contemplates that the Association would bargain on behalf of its members with "all building trade unions in the Chicago area...." This statement, as well as the statement on the reverse side of the application form concerning assignment of bargaining rights, indicates that the Company assigned its rights to bargain with all trade unions in the construction industry and not just the two unions with which the Company had prior bargaining relationships.[4]

It might be argued that the general language of Article VI, Section 5, of the By-Laws is narrowed by the language in Article VI, Section 6, under the doctrine of *ejudsem generis*. *Ejudsem generis* is a contract construction doctrine which requires that general words, when followed by more specific words, are not to be construed to their widest extent. The specific words limit the definition of the general words. *See Lone Star Steel Co. v. N.L.R.B.*, 639 F.2d 545 (10th Cir.1980), certiorari denied, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335; *International Ladies' Garment Workers' Union v. DeeVille Blouse Co., Inc.*, 486 F.Supp. 1253 (E.D.Pa.1980). Under this doctrine, it could be argued that

the general assignment clause in Section 5 is modified by the clause in Section 6 stating that the Company assigns its rights to bargain with unions the members of which the Company employs. The Company's bargaining rights are not generally assigned but only narrowly assigned. The doctrine of *ejudsem generis*, however, is "not a cast-iron rule." *International Ladies' Garment Workers' Union v. DeeVille Blouse Co., Inc.*, 486 F.Supp. at 1258–59 n. 7 (quoting *United States v. Mescall*, 215 U.S. 26, 31, 30 S.Ct. 19, 20, 54 L.Ed. 77). This doctrine cannot be used to render the general words meaningless or to thwart the clear purpose of the agreement. *International Ladies' Garment Workers' Union v. DeeVille Blouse Co., Inc.*, 486 F.Supp. at 1259. Looking to the application and By-Laws as a whole, the language requires that a member assign its rights to bargain to BAC and BAC becomes the exclusive bargaining agent. The language never clearly limits the extent of that right. In any event, the language of Section 6 does not limit necessarily the language in Section 5. Section 6 merely explains that a member of BAC is only bound by contracts with specific unions when it employs members of that union. In this instance, the Company is required to comply with the Union's contract only when it does jobs requiring Union employees. Not all construction jobs done by the Company require members of the Union to perform them. The language of Section 6, therefore, does not limit the language of Section 5. The meaning of the application must be determined by language of the application as a whole, when read in conjunction with the By-Laws.

When reading the application as a whole, including the By-Laws which are incorporated into the application, we conclude that the Company assigned all its bargaining rights; BAC was to be its exclusive agent.[5] An employer is bound by

---

4. This is especially true in the construction field where, at any one time, an employer employs different workers to complete different tasks.

5. Even if we were to find, which we do not, that the application and By-Laws were ambiguous as to which rights were being assigned, doubt as to whether parties are bound by the collective bar-

contracts negotiated by an association by virtue of its membership and its authorization to the association to negotiate the contracts. *Paul v. Lindgren,* 375 F.Supp. 843 (N.D.Ill.1974). The Company authorized BAC, which in turn authorized MARBA, to negotiate on its behalf. The Company is therefore bound by the collective bargaining agreement negotiated by MARBA and the Union.[6]

The Company contends that it cannot be bound because there was no "meeting of the minds" and the Company never intended to be bound by the agreement between MARBA and the Union. The Company's reliance on *Caporale v. Mar Les, Inc.,* 656 F.2d 242 (7th Cir.1981) is misplaced. In *Caporale,* this Court refused to find that a contract existed between the employer and the union because the terms of the agreement had never been provided specifically to the defendant-employer and there had been no mutual assent to the terms of the agreement. The employer and union in *Caporale* had for two years signed "memorandums of agreement" in which the employer recognized the union as the sole bargaining agent for the employer's laborers, in which certain collective bargaining agreements were incorporated by reference, and in which the employer agreed to pay certain sums to the union welfare fund. The employer signed these agreements for the purpose of providing its one union member employee coverage under the union welfare fund. The union never provided the company with a copy of the collective bargaining agreement incorporated by reference; neither the company nor the union ever conformed its conduct to the collective bargaining agreement; and the company paid into the welfare fund as long as it employed the one union member employee. The court found that there was no mutual assent to a contract because the terms of the agreement were not reasonably certain at the time the contract was signed.

The instant case is distinguishable. The Company did not negotiate with the Union directly as the employer did in *Caporale.* The Company assigned away its bargaining rights. The fact that it did not know specifically the terms of the MARBA agreement with the Union does not change the fact that the Company assigned its rights, intending to be bound by whatever MARBA negotiated. The union in *Caporale* was responsible for the lack of mutual assent by neglecting to provide the terms of the collective bargaining agreement to the employer. In the instant case, MARBA and BAC did not inform the Company of the exact collective bargaining agreements it had with area trade unions, but clearly informed the Company it was assigning away its collective bargaining rights. The Company cannot now assert that it did not intend to be bound by contracts negotiated by MARBA.[7]

■ The Company's belated attempt to resign from BAC does not alter its obligation to arbitrate the dispute. The Company's resignation from BAC does not change its contractual obligations to the Union, unless and until it properly notifies the Union that it is no longer a party to the agreement. *See Nolde Brothers, Inc. v. Bakery and Confectionary Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300. How the Company may resign properly from BAC and avoid its contractual obligations should be governed by the BAC By-

---

gaining agreement should be resolved in favor of coverage. *United Steel Workers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409.

**6.** While not dispositive of the issue, BAC considered the Company to be bound (see deposition of BAC executive vice-president, Donald Dvorak, pp. 22–23).

**7.** The Company in its reply brief cites an unpublished district court order in support of the proposition that it is not bound by the collective bargaining agreement with the Union. The case, *Paul v. Maintenance Coatings Co.,* No. 74 C 1684 (N.D.Ill.1976), involves an employer who joined an employer association but did not expressly assign its bargaining rights to the association. The case is, therefore, not relevant to the instant case where the Company expressly assigned its rights.

Laws and the applicable collective bargaining agreement.

The Company expressly assigned its bargaining rights to BAC and MARBA. It is bound by the collective bargaining agreement negotiated by MARBA and the Union. A dispute has arisen under the agreement and the ultimate resolution of that dispute, according to the contract, is left to binding arbitration, where, as here, the parties cannot resolve the dispute by agreement. Federal policy in favor of arbitration is well established. *United Steel Workers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steel Workers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steel Workers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The Company must proceed to arbitration.

The parties do not argue that a material issue of fact still exists, but, rather, argue over whether the Company is bound by the terms of the application to BAC. The Company, by its application to BAC, is bound by the collective bargaining agreement. The district court decision ordering the parties to arbitration must therefore be affirmed.