In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-1034 and 01-1080

Thomas J. Moriarty, Trustee, on behalf of
the Trustees of the Local Union No. 727
I.B.T. Pension Trust and the Trustees of
the Teamsters Local Union No. 727 Health
and Welfare Trust,

Plaintiff-Appellee,

v.

George Pepper, individually, as sole proprietor of
Hills Funeral Home, and Hills Funeral Home, Ltd.,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 773--Milton I. Shadur, Judge.

Argued June 5, 2001--Decided July 2, 2001

Before Flaum, Chief Judge, and Manion and
Rovner, Circuit Judges.

Flaum, Chief Judge. Thomas J. Moriarty,
in his capacity as Trustee for the Local
Union No. 727 I.B.T. Pension Trust and
the Teamsters Local Union No. 727 Health
and Welfare Trust (the "Funds"), filed
suit against George Pepper and Hills
Funeral Home, Ltd. ("Hills"), pursuant to
the Labor Management Relations Act
("LMRA"), 28 U.S.C. sec. 185 and the
Employee Retirement Income Security Act
of 1974 ("ERISA"), 29 U.S.C. sec.
1132(a)(3), seeking to recover employer
contributions owed to the Funds. The
district court granted Moriarty's summary
judgment motion with regard to liability
and entered judgment in favor of the
Funds against Pepper and Hills, jointly
and severally, in the amount of
$157,753.95./1 Hills attempted to avoid
being held liable; however, the district
court determined in a summary judgment
motion that Hills, who had purchased
Pepper's funeral home business, was a
successor to Pepper for liability
purposes. For the reasons stated herein,
we reverse the judgment of the district
court with respect to its conclusion that
Pepper and Hills are jointly and

severally liable and remand for further proceedings in light of this opinion. At this juncture, for the reasons stated below, we will not address the district court's successor liability decision with regard to Hills.

I.  Background

Pepper, in approximately February of 1979, began operating Olympic Hill Chapel (later changing the name to Hills Funeral Home in 1982) in Palos, Illinois. Moriarty, who was Executive Director of the Funeral Directors Services Association of Greater Chicago ("FDSA" or the "Association"), learned that Pepper was considering acquiring a funeral home business and sent him in December of 1978 an application for membership in the FDSA. Pepper signed and returned the application; thereby, he was elected to FDSA membership in February of 1979. The FDSA is a multi-employer organization of funeral homes located in the Chicago metropolitan area, which among its other services, negotiates labor agreements for its members, provides them with a pre-need funeral arrangement trust fund, and continuing education programs. The Funds are third-party beneficiaries of collective bargaining agreements ("CBAs") entered into between the FDSA and the union for funeral workers (the "Union")./2

To fully comprehend the current dispute between Moriarty and Pepper, one needs to fast forward in time to 1997. It is at this point that the Funds' auditor informed Pepper that the Funds wanted to conduct an audit (covering the period from January 1, 1990 through June 30, 1997) of Hills Funeral Home's payroll records. The auditor determined that Pepper, as the sole proprietor of Hills Funeral Home, owed $38,575.53 to the Pension Fund and $65,780.24 to the Health and Welfare Fund in contributions, interest, liquidated damages, and audit fees. Sometime between October 22 and November 5, 1997, Pepper received a copy of the audit report, and in January 1998 Pepper submitted his resignation to the FDSA, which was accepted on February 18, 1998. In the meantime, Pepper sold his funeral home business to Jason and Frank Leonard in late January of 1998.

The question that the district court

confronted on summary judgment was whether Pepper manifested an unequivocal intention to be bound by the FDSA's collective bargaining activities with the Union, thereby causing him to owe the Funds contributions. The district court answered this question in the affirmative. Thus, the district court found Pepper was liable to the Funds for unpaid contributions. In addition, the district court on summary judgment ruled in favor of the Funds when it found that "Hills is a successor to Pepper's funeral home business as a matter of law and, as such, it is also liable under ERISA for any employer contributions that Pepper owes to [the] Funds." Moriarty v. Hills Funeral Home, Ltd., 93 F.Supp. 2d 910, 916 (N.D. Ill. 2000). It is our task to assess whether the district court properly granted summary judgment in favor of the Funds on both of these issues.

II. Discussion

A. Liability Claim

We review the district court's grant of summary judgment de novo, construing all of the facts and reasonable inferences that can be drawn from those facts in favor of the nonmoving party. See Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson, 238 F.3d 891, 894 (7th Cir. 2001). A grant of summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

The district court concluded that Pepper expressed an unequivocal intent to be bound by the FDSA's collective bargaining activities. To reach such a position, the district court analyzed the parallels between Pepper's situation and that of George Bliudzius, President of G. Bliudzius Contractors, Inc., in International Union of Operating Eng'rs, Local 150 v. G. Bliudzius Contractors, Inc., 730 F.2d 1093 (7th Cir. 1984). As the district judge explained, in Bliudzius, the employer signed a membership application that said, "members of the [Builders'] Association [of Chicago], delegated and assigned to the [Builders'] Association certain of its rights to bargain collectively with

labor organizations," id. at 1095, and that it "agrees to be governed by and abides by the provisions of the Constitution and By-Laws of the Builders' Association . . . ." Id. at 1094. Further, as the district court pointed out, the By-Laws provided that "[e]ach member shall, as a condition of membership in the [Builders'] Association, and while a member thereof be deemed to have designated the [Builders'] Association as the exclusive collective bargaining representative for the purpose of negotiating collective bargaining agreements . . . ." Id. at 1094 n.1. When Pepper joined the FDSA in 1979, he signed a membership application that said he "agrees, if elected to membership, to abide and be bound by the provisions of the Constitution, By-Laws, Rules and Regulations of the Association." At that time, the FDSA's Constitution, in relevant part, said: "Labor Negotiations. The Association, through action by the General Executive Board, shall authorize the President to appoint a committee to represent the members of the Association in labor negotiations or any dispute or grievance which may arise from such labor negotiations and to enter into such agreements as a result of the negotiations, subject to the approval of the membership." According to the district court, "As in Bliudzius, that provision [Labor Negotiations] was an express delegation of bargaining authority that bound Pepper to the CBAs. And no communication that ensued between Pepper and [the] Association during the nearly two decades of Pepper's Association membership ever changed that original bargain . . . ." Hills, 93 F.Supp. 2d at 917. Evidently, the district court read the language of the Labor Negotiations provision as an express indication that Pepper intended to be bound by the bargaining activities between the FDSA and the Union.

To be sure, the district court was careful not to ignore Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859 (7th Cir. 1998), the case that outlines how one discerns if an employer who is a member of a multi-employer organization has manifested an unequivocal intent to be bound by a contract that an association negotiates. The district court distinguished

Glueckert on the basis that when Glueckert joined the FDSA, the Labor Negotiations provision was not contained within FDSA's Constitution, but rather was located in the FDSA's separate Official Statements of Policy. However, at the time Pepper joined the FDSA, the Labor Negotiations provision was part of the Constitution and he agreed to abide by and be bound by the provisions of the Constitution. The district court appears to suggest that the absence of the Labor Negotiations provision within the FDSA's Constitution is what precipitated us to find that Glueckert had not expressed an unequivocal intention to be bound by the FDSA's collective bargaining activities. The district court also noted that we considered a "group of inferential factors" that also led us to the conclusion that Glueckert had not expressed an intent to be bound by the FDSA's collective bargaining agreements. Hills, 93 F.Supp.2d at 918. Such distinctions are of import, as the district court found, "By total contrast [from Glueckert], Pepper's express contractual undertaking to abide by and be bound by [the] Association's Constitution, coupled with the Constitution's then-existing express provisions authorizing CBAs to be negotiated and entered into by [the] Association (subject to approval by the membership generally, which was obtained in every instance), created a contract that satisfied the 'unequivocal intention to be bound' test--and Pepper cannot escape that result by his ostrichlike head-in-the-sand arguments . . . ." Id. Quite clearly, the district court had firmly resolved that Pepper had granted the FDSA express actual authority to bargain on his behalf.

Upon review, we cannot concur with the district court's conclusion that Pepper expressed an unequivocal intent to be bound by the FDSA's collective bargaining activities. It appears that the district court found that Pepper's signing of the Association's membership application and the language in the Constitution regarding Labor Negotiations resulted in an express delegation of authority by Pepper to the FDSA permitting it to bargain on Pepper's behalf. Although the district court believes there are strong similarities between this case and Bliudzius, the two cases differ in

important ways. For instance, in Bliudzius there is a specific reference in the application that a member is delegating and assigning certain of his or her collective bargaining rights to the Builders' Association. 730 F.2d at 1095. In addition, the By-Laws in Bliudzius speak of membership in the Builders' Association being conditioned upon each member designating the Builders' Association as his or her exclusive collective bargaining representative. Id. at 1094 n.1. It is rather clear in Bliudzius that there was an express delegation of authority to the Builders' Association. The same cannot be said of the relationship between Pepper and the FDSA. The application that Pepper signed does not specifically state that he agreed to delegate and assign his bargaining rights to the FDSA nor does the Labor Negotiations provision in the FDSA's Constitution refer to each member having to designate for the purposes of collective bargaining the FDSA as its representative. While the Labor Negotiations clause makes mention that the FDSA will engage in collective bargaining, it does not state or imply that all members or any particular member will be bound by such collective bargaining activity. Therefore, we cannot conclude that the application that Pepper signed and the Labor Negotiations clause reveals an express intention on Pepper's part to be bound by the FDSA's collective bargaining activities.

Although we have determined that Pepper did not expressly authorize the FDSA to bargain on his behalf, there still remains the question of whether he manifested his unequivocal intent to be bound in some other fashion. Because the district court found that Pepper had expressly authorized the FDSA to bargain on his behalf, it never addressed the myriad of factors discussed in Glueckert regarding whether an employer has manifested an unequivocal intent to be bound by the FDSA's collective bargaining activities. Indeed, we have said that "the framework of agency law, especially the concepts of implied actual or apparent authority, will provide, as a practical matter, the basic matrix of the court's analysis. Nevertheless, the 'unequivocal intent to be bound' principle must inform that analysis by requiring substantially more factual

precision than might be true in other agency situations. It requires that certainty by focusing the judicial inquiry on factors that are peculiarly relevant to determining whether an employer member of a multi-employer organization can be said to have consented to be bound by the contract negotiated by the association." Glueckert, 155 F.3d at 866. At this stage, such factors still remain a point of contention between the parties that have yet to be resolved. Thus, the dispute between Pepper and Moriarty remains.

B.  Successor Liability

The district court determined that Hills was a successor to Pepper's funeral home and therefore liable under ERISA and the LMRA for any employer contributions that Pepper owed to the Funds. According to the district court, "Hills has not raised a fact issue for trial, either as to the continuity of business operations as between itself and Pepper's sole proprietorship or as to [the] Leonards[ ] being on express notice of [the] Funds' claim prior to the sale." Hills, 93 F.Supp.2d at 916. In light of our remand, it would be premature for us at this point to address the successor liability issue. See Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir. 1994) (citing U.S. National Bank of Oregon v. Independent Insurance Agents, 508 U.S. 439, 446 (1993)) (The Supreme Court has said that "[t]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions.").

III.  Conclusion

We Reverse the district court's decision to grant summary judgment in favor of Moriarty with regard to Pepper and Hills', joint and several, liability owed to the Funds and Remand this case to the district court for proceedings consistent with this opinion. We do not reach the successor liability question and so express no opinion on whether the issue was correctly decided by the district court.

FOOTNOTES

/1 The district court arrived at the amount of $157,753.95 in the following manner: "This amount consists of: (A) under Plaintiff's ERISA claim (i) $51,765.00 in principal ($32,878.00 – Health and Welfare Trust, $18,887.00 – Pension Trust); (ii) $36,491.03 in interest ($22,979.30 – Health and Welfare Trust, $13,511.73 – Pension Trust); (iii) $36,491.03 in double interest ($22,979.30 – Health and Welfare Trust, $13,511.73 – Pension Trust), as allowed pursuant to 29 U.S.C. sec. 1132(g)(2); (iv) $5,575.26 in costs for prosecuting this suit; and (v) $2,998.00 in audit costs; (B) and under Plaintiff's LMRA claim (i) $13,732.02 in principal ($8,567.30 – Health and Welfare Trust, $5,164.72 – Pension Trust); and (ii) $10,701.61 in interest ($6,572.10 – Health and Welfare Trust, $4,129.51 – Pension Trust)."

/2 The Union's full name is: Auto Livery Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxicab Drivers, Miscellaneous Garage Employees, Car Washers, Greasers, Polishers and Wash Rack Attendants Union, Local No. 727, I.B.T.