# In the

# United States Court of Appeals

## For the Seventh Circuit

—————————

No. 04-2591

TRUSTEES OF THE CHICAGO PAINTERS AND
DECORATORS PENSION, HEALTH AND WELFARE, AND
DEFERRED SAVINGS PLAN TRUST FUNDS,

*Plaintiff-Appellant,*

v.

LACOSTA, INCORPORATED,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 4952—**Samuel Der-Yeghiayan**, *Judge.*

—————————

ARGUED NOVEMBER 29, 2004—DECIDED FEBRUARY 10, 2005

—————————

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* The President and sole share-holder of LaCosta, Inc. completed and signed a one-page free membership application from the Chicago Painting and Decorating Contractors Association ("Chicago PDCA"). The membership offer indicated that applicants agreed to abide by the constitution and bylaws of the Chicago PDCA, which appoint that organization as the bargaining representative of its active members and bind them to the collective bargaining agreement ("CBA") between the Chicago PDCA and District Council 14. The terms of the CBA require Chicago PDCA members to contribute to the Chicago

Painters and Decorators Pension, Health and Welfare, and Deferred Savings Plan Trust Funds ("Funds"). The Trustees of these Funds filed an action to collect contributions from LaCosta, which did not pay any money into the Funds after submitting the membership application. Because we find that LaCosta did not demonstrate an unequivocal intent to be bound by the District Council 14 CBA, we affirm the district court's grant of summary judgment for LaCosta.

## I.  History

Karla Mota Johnson is the President and sole shareholder of LaCosta, an Illinois corporation that provides painting, janitorial, and supplemental labor services to businesses in Illinois and several other states. LaCosta has belonged to the National Painting and Decorating Contractors of America ("National PDCA") since 1981 and the Illinois PDCA, a council of the National PDCA, since 1997. Neither of these trade associations requires its members to be parties to a CBA with a designated union. Nevertheless, LaCosta entered a CBA with the Craftsman International Union in December 2000. Prior to that time, LaCosta was a non-union corporation. LaCosta provides its own health insurance program and 401(k) plan to its employees.

On January 3, 2001, Johnson signed a form from the Chicago PDCA titled "Free Membership Application." The form had been placed on her desk for signature along with some other papers. Although Johnson does not remember seeing or signing the application, her assistant recalls that another LaCosta employee had expressed interest in receiving a magazine distributed by the Chicago PDCA.

The Chicago PDCA, a non-party to this proceeding, is a trade association of painting and decorating contractors in the Chicago area. Like the Illinois PDCA, it is a council of the National PDCA. Unlike the Illinois PDCA, however,

it is totally "unionized"; according to its constitution and bylaws, each active member appoints the Chicago PDCA as its agent for collective bargaining purposes. The union with which the Chicago PDCA has entered a CBA is District Council 14. The District Council 14 CBA requires active Chicago PDCA members to pay certain wages to its employees and to contribute to the Funds. Three members of the Chicago PDCA board of directors and three members of District Council 14 act as Trustees of the Funds.

The Chicago PDCA free membership offer has been extended to existing Chicago PDCA members and signatories to the District Council 14 CBA each year since 1997. It was not sent to contractors such as LaCosta, which have neither an existing Chicago PDCA membership nor a relationship with District Council 14, so it is unclear how the form came to be placed on Johnson's desk.

Just above the signature line—on which Johnson signed—is the statement: "I have read, understand, and agree to abide by the Constitution and By-Laws of the Chicago Council/PDCA and the Current Labor Management Agreement between Painter's District Council No. 14 and PDCA (copies available on request)." LaCosta never received or requested a copy of the Chicago PDCA's constitution or bylaws. A flier accompanying the free membership application stated that any "Union Painter Contractor Company that is in good standing with the Industry Advancement Fund" was eligible to receive a free membership for the year 2001.

The signed free membership application was faxed to the Chicago PDCA on January 17, 2001. At its February 14, 2001, meeting, the Chicago PDCA board of directors considered LaCosta's application but did not take action because of a lack of information regarding LaCosta's contribution history to the Funds. Following the meeting, the Executive Director of the Chicago PDCA learned that

LaCosta had no history of contributions to the Funds. After a conversation with the Chicago PDCA President (who is also one of the Trustees), the Executive Director signed LaCosta's membership application indicating that LaCosta was approved for membership on February 20, 2001.

The Chicago PDCA then began to send correspondence and make calls to LaCosta regarding membership in the association and the implications thereof, including LaCosta's obligation to contribute to the Funds. During the week of March 5, 2001, LaCosta's Chief Financial Officer expressed confusion to the Chicago PDCA, saying that he did not understand how LaCosta came to be a District Council 14 union contractor and that LaCosta did not wish to become such a contractor. LaCosta did not pay its employees according to the District Council 14 CBA wage scale, nor did it ever contribute to the Funds. None of its employees ever submitted claims to the Funds.

In June of 2001, the Trustees filed this action seeking the contributions they believe are due as a result of LaCosta's membership in the Chicago PDCA. Finding that LaCosta was not bound to the District Council 14 CBA by express delegation or by conduct manifesting an unequivocal intent to be bound, the district court granted summary judgment for LaCosta. The Trustees appeal.

## II.　Analysis

We review a district court's grant of summary judgment *de novo. Penn v. Harris*, 296 F.3d 573, 575 (7th Cir. 2002). We must construe all facts and draw all reasonable inferences in favor of the Trustees, the party against whom the motion under consideration was made. *See id.* Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A.　"Express" Delegation of Collective Bargaining Authority

The Trustees argue that Johnson's signature on the Chicago PDCA membership application form indicates her agreement to abide by the Chicago PDCA constitution and bylaws and is an "express" delegation of collective bargaining authority to the Chicago PDCA, binding LaCosta to the CBA. In some cases, a signature on a trade association's membership application expressly delegates collective bargaining power and binds the applicant to a CBA. *See Int'l Union of Operating Eng'rs, Local 150 v. G. Bliudzius Contractors, Inc.*, 730 F.2d 1093, 1097-98 (7th Cir. 1984). However, such a signature is not dispositive, because the well-established test for whether a member of a multi-employer association is bound by the association's CBA is whether the member has shown an unequivocal intention to be bound by group collective bargaining. *See, e.g.*, *Moriarty v. Pepper*, 256 F.3d 554, 557 (7th Cir. 2001); *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 (7th Cir. 1998); *Trs. of the UIU Health & Welfare Fund v. N.Y. Flame Proofing Co.*, 828 F.2d 79, 83 (2d Cir. 1987). In this case, we agree with the district court that Johnson's signature did not convey an unequivocal intent to delegate collective bargaining authority to the Chicago PDCA.

First, the application form does not contain sufficient information to show LaCosta's unequivocal intent to be bound to the District Council 14 CBA. It includes no language suggesting the union implications of joining the Chicago PDCA, but rather emphasizes the no-cost, limited-time nature of the offer and the benefits of membership, from magazine subscriptions to social events and technical assistance.

As noted above, the constitution and bylaws are referenced on the application and "available on request," but were not provided with it. When sending an application to non-union contractors, whose obligations would be changed by membership, the Chicago PDCA generally includes a cover letter clearly explaining that "[b]y becoming a Member, you automatically become bound by the [Labor Management Agreements with Painters District Council No. 14]." (R. 40 at 40-41.) LaCosta obtained the free membership application outside of normal channels and thus was not provided with such a cover letter.

This is a far cry from the application at issue in *Bliudzius*, which clearly stated on both the front and reverse sides that the employer was delegating its collective bargaining rights to the association. 730 F.2d at 1095. Although it was not informed of the exact CBAs in effect, the employer in *Bliudzius* was bound by them because it had clearly assigned away its collective bargaining rights to the association. *Id.* at 1097.

As we noted in *Pepper*, the "assignment and delegation" language is critical. *See* 256 F.3d at 558. The application form in that case, like this one, did not specifically state that the applicant agreed to delegate and assign his collective bargaining rights and was deemed insufficient to show the employer's express intent to be bound by the trade association's CBA. *See id.*

The Chicago PDCA free membership application is also problematic in that it does not specify the type of member-

ship for which the applicant is applying. The Chicago PDCA Constitution and Bylaws provide for several classes of membership, but only "Active" members are obligated to contribute to the Funds as mandated by the District Council 14 CBA. Active members are bound by the CBA, while Honorary and Associate members receive the other benefits of Chicago PDCA without being bound by the association's collective bargaining activities. (R. 26 Ex. 7.)

The Trustees argue that a reading of the Chicago PDCA Constitution and Bylaws would obviate this confusion, because painting and decorating contractors currently in business are only eligible for Active membership. This rule is not explicitly stated, however, and the ambiguity is more evidence that the signature on the application form shows less than an unequivocal intent to be bound.

As the district court noted, the way in which LaCosta became "bound" to the District Council 14 CBA "borders on deception." *Trs. of the Chi. Painters & Decorators Pension, Health, & Welfare & Deferred Sav. Plan Trust Funds v. LaCosta, Inc.*, No. 01 C 4952, 2004 WL 1243935, at *3 (N.D. Ill. June 2, 2004). While the ultimate question in determining whether LaCosta expressly assigned away its collective bargaining rights is whether it demonstrated an unequivocal intent to be bound, agency principles play into this analysis. *See Glueckert*, 155 F.3d at 865-66.

The Trustees urge that any deceptive conduct on the part of the Chicago PDCA is irrelevant to this case, because the association was acting with apparent authority to bind LaCosta to the CBA. "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Id.* at 866 (quoting Restatement (Second) of Agency § 27).

It is doubtful that Johnson's signature on the application form could be *reasonably interpreted* by the Trustees as assigning away LaCosta's collective bargaining rights. When LaCosta's application was received, it sparked discussions at the Chicago PDCA because it was "unusual that an application would come from a contractor not known to be associated with [District Council 14]." (R. 40 at p. 45.) Half of the Trustees of the Funds (there are six Trustees in total) also serve on the Board of the Chicago PDCA. One overlapping member, the President of the PDCA, gave the Executive Director permission to approve LaCosta's membership despite its lack of past contributions to the Funds. In light of this, and the deficiencies in the application, we find that the membership application submitted by LaCosta did not expressly assign its collective bargaining rights to the Chicago PDCA.

## B.   Conduct Showing Intent To Be Bound by CBA

Having found that Johnson's signature is not sufficient to bind LaCosta to the CBA, we analyze the factors set forth in *Glueckert* to determine whether LaCosta's other conduct manifested an unequivocal intent to be bound to the District Council 14 CBA. The record is clear that none of these factors weigh in favor of the Trustees.

First, if negotiating a CBA is the principal or sole activity in which an organization engages, or if the organization has a long-standing and universally known custom of binding its members to its CBAs, joining the organization might show an unequivocal intent to be bound by the CBA. *See Glueckert*, 155 F.3d at 866-67. The Trustees point out that the Chicago PDCA has a seventy-year history of binding all active members to the CBA. Still, as its flier advertises, there are many other activities, both social and professional, in which it is involved. Also, it is not universal for councils of the National PDCA to be unionized. For exam-

ple, the Illinois PDCA, with which LaCosta was familiar, is a non-unionized council.

Courts have also considered whether the individual employer participated in or closely monitored the collective bargaining process. *Id.* at 867. LaCosta had nothing to do with the CBA between the Chicago PDCA and District Council 14. Indeed, it had entered its own CBA with an entirely different union just a month before Johnson signed the free membership application.

Finally, an employer's intent to be bound can be established if it adheres to the terms of the CBA. *Id.* LaCosta in no way adhered to the District Council 14 CBA. It did not contribute to the Funds, it did not pay its employees according to the CBA wage scale, and its employees submitted no claims to the Funds. During the week of March 5, 2001, just weeks after LaCosta was approved for Chicago PDCA membership, its CFO expressed confusion to the Chicago PDCA about why it was talking to him about District Council 14.

### III.   Conclusion

LaCosta never displayed an unequivocal intent to be bound to the CBA between District Council 14 and the Chicago PDCA through an express assignment of collective bargaining rights or through other conduct. "A membership by an employer in an association with resulting consequences to be bound by a collective bargaining agreement should be based upon mutual trust and a clear understanding of the rights and obligations of all the parties and not be based upon vagueness, confusion, or trickery." *LaCosta*, 2004 WL 1243935, at *5. The district court's grant of summary judgment for LaCosta is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*